SELING, SUPERINTENDENT, SPECIAL COMMIT-
MENT CENTER *v.* YOUNG

No. 99–1185.   Argued October 31, 2000—Decided January 17, 2001

252

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a concurring opinion, in which SOUTER, J., joined, *post*, p. 267. THOMAS, J., filed an opinion concurring in the judgment, *post*, p. 270. STEVENS, J., filed a dissenting opinion, *post*, p. 274.

*Maureen Hart*, Senior Assistant Attorney General of Washington, argued the cause for petitioner. With her on the briefs were *Christine O. Gregoire*, Attorney General, *Sarah Blackman Sappington*, Assistant Attorney General, *David J. W. Hackett*, Special Assistant Attorney General, and *William Berggren Collins*, Senior Assistant Attorney General.

*Robert C. Boruchowitz* argued the cause for respondent. With him on the briefs were *David B. Hirsch*, *Dennis P. Carroll*, and *Christine Jackson*.*

---

*A brief of *amici curiae* urging reversal was filed for the State of Kansas et al. by *Carla J. Stovall*, Attorney General of Kansas, *Stephen R. McAllister*, State Solicitor, and *Jared S. Maag*, Assistant Attorney Gen-

JUSTICE O'CONNOR delivered the opinion of the Court.

Washington State's Community Protection Act of 1990 authorizes the civil commitment of "sexually violent predators," persons who suffer from a mental abnormality or personality disorder that makes them likely to engage in predatory acts of sexual violence. Wash. Rev. Code § 71.09.010 *et seq.* (1992). Respondent, Andre Brigham Young, is confined as a sexually violent predator at the Special Commitment Center (Center), for which petitioner is the superintendent. After respondent's challenges to his commitment in state court proved largely unsuccessful, he instituted a habeas action under 28 U. S. C. § 2254, seeking release from confinement. The Washington Supreme Court had already held that the Act is civil, *In re Young,* 122 Wash. 2d 1, 857 P. 2d 989 (1993) (en banc), and this Court held a similar commitment scheme for sexually violent predators in Kansas to be civil on its face, *Kansas* v. *Hendricks,* 521 U. S. 346 (1997). The Court of Appeals for the Ninth Circuit nevertheless concluded that respondent could challenge the statute as being punitive "as applied" to him in violation of the

---

eral, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Janet Napolitano* of Arizona, *Mark Pryor* of Arkansas, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *Robert A. Butterworth* of Florida, *James E. Ryan* of Illinois, *Thomas J. Miller* of Iowa, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Jennifer M. Granholm* of Michigan, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *John J. Farmer, Jr.,* of New Jersey, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Jan Graham* of Utah, *Mark L. Earley* of Virginia, and *James E. Doyle* of Wisconsin.

Briefs of *amici curiae* urging affirmance were filed for the California Atascadero State Hospital Section 6600 Civil Committees by *Joel E. Krischer;* and for the National Association of Criminal Defense Lawyers by *Edward M. Chikofsky* and *Barbara E. Bergman.*

Double Jeopardy and *Ex Post Facto* Clauses, and remanded the case to the District Court for an evidentiary hearing.

## I

## A

Washington State's Community Protection Act of 1990 (Act) was a response to citizens' concerns about laws and procedures regarding sexually violent offenders. One of the Act's provisions authorizes civil commitment of such offenders. Wash. Rev. Code § 71.09.010 *et seq.* (1992 and Supp. 2000). The Act defines a sexually violent predator as someone who has been convicted of, or charged with, a crime of sexual violence and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility. § 71.09.020(1) (Supp. 2000). The statute reaches prisoners, juveniles, persons found incompetent to stand trial, persons found not guilty by reason of insanity, and persons at any time convicted of a sexually violent offense who have committed a recent overt act. § 71.09.030. Generally, when it appears that a person who has committed a sexually violent offense is about to be released from confinement, the prosecuting attorney files a petition alleging that that person is a sexually violent predator. *Ibid.* That filing triggers a process for charging and trying the person as a sexually violent predator, during which he is afforded a panoply of protections including counsel and experts (paid for by the State in cases of indigency), a probable cause hearing, and trial by judge or jury at the individual's option. §§ 71.09.040–71.09.050. At trial, the State bears the burden to prove beyond a reasonable doubt that the person is a sexually violent predator. § 71.09.060(1).

Upon the finding that a person is a sexually violent predator, he is committed for control, care, and treatment to the custody of the department of social and health services. *Ibid.* Once confined, the person has a right to adequate care

and individualized treatment. § 71.09.080(2). The person is also entitled to an annual examination of his mental condition. § 71.09.070. If that examination indicates that the individual's condition is so changed that he is not likely to engage in predatory acts of sexual violence, state officials must authorize the person to petition the court for conditional release or discharge. § 71.09.090(1). The person is entitled to a hearing at which the State again bears the burden of proving beyond a reasonable doubt that he is not safe to be at large. *Ibid.* The person may also independently petition the court for release. § 71.09.090(2). At a show cause hearing, if the court finds probable cause to believe that the person is no longer dangerous, a full hearing will be held at which the State again bears the burden of proof. *Ibid.*

The Act also provides a procedure to petition for conditional release to a less restrictive alternative to confinement. § 71.09.090. Before ordering conditional release, the court must find that the person will be treated by a state certified sexual offender treatment provider, that there is a specific course of treatment, that housing exists that will be sufficiently secure to protect the community, and that the person is willing to comply with the treatment and supervision requirements. § 71.09.092. Conditional release is subject to annual review until the person is unconditionally released. §§ 71.09.096, 71.09.098.

B

Respondent, Andre Brigham Young, was convicted of six rapes over three decades. App. to Pet. for Cert. 33a. Young was scheduled to be released from prison for his most recent conviction in October 1990. One day prior to his scheduled release, the State filed a petition to commit Young as a sexually violent predator. *Id.,* at 32a.

At the commitment hearing, Young's mental health experts testified that there is no mental disorder that makes a person likely to reoffend and that there is no way to predict accurately who will reoffend. The State called an expert

who testified, based upon a review of Young's records, that Young suffered from a severe personality disorder not otherwise specified with primarily paranoid and antisocial features, and a severe paraphilia, which would be classified as either paraphilia sexual sadism or paraphilia not otherwise specified (rape). See generally American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 522–523, 530, 532, 634, 645–646, 673 (4th ed. 1994). In the state expert's opinion, severe paraphilia constituted a mental abnormality under the Act. The State's expert concluded that Young's condition, in combination with the personality disorder, the span of time during which Young committed his crimes, his recidivism, his persistent denial, and his lack of empathy or remorse, made it more likely than not that he would commit further sexually violent acts. The victims of Young's rapes also testified. The jury unanimously concluded that Young was a sexually violent predator.

Young and another individual appealed their commitments in state court, arguing that the Act violated the Double Jeopardy, *Ex Post Facto*, Due Process, and Equal Protection Clauses of the Federal Constitution. In major respects, the Washington Supreme Court held that the Act is constitutional. *In re Young*, 122 Wash. 2d 1, 857 P. 2d 989 (1993) (en banc). To the extent the court concluded that the Act violated due process and equal protection principles, those rulings are reflected in subsequent amendments to the Act. See Part I–A, *supra*.

The Washington court reasoned that the claimants' double jeopardy and *ex post facto* claims hinged on whether the Act is civil or criminal in nature. Following this Court's precedents, the court examined the language of the Act, the legislative history, and the purpose and effect of the statutory scheme. The court found that the legislature clearly intended to create a civil scheme both in the statutory language and legislative history. The court then turned to

examine whether the actual impact of the Act is civil or criminal. The Act, the court concluded, is concerned with treating committed persons for a current mental abnormality, and protecting society from the sexually violent acts associated with that abnormality, rather than being concerned with criminal culpability. The court distinguished the goals of incapacitation and treatment from the goal of punishment. The court found that the Washington Act is designed to further legitimate goals of civil confinement and that the claimants had failed to provide proof to the contrary. 122 Wash. 2d, at 18–25, 857 P. 2d, at 996–1000.

The Act spawned several other challenges in state and federal court, two of which bear mention. Richard Turay, committed as a sexually violent predator, filed suit in Federal District Court against Center officials under Rev. Stat. § 1979, 42 U. S. C. § 1983, alleging unconstitutional conditions of confinement and inadequate treatment at the Center. In 1994, a jury concluded that the Center had failed to provide constitutionally adequate mental health treatment. App. 64–68. The court ordered officials at the Center to bring the institution up to constitutional standards, appointing a Special Master to monitor progress at the Center. The Center currently operates under an injunction. *Turay* v. *Seling*, 108 F. Supp. 2d 1148 (WD Wash. 2000). See also Brief for Petitioner 8–9.

Turay also appealed his commitment as a sexually violent predator in state court, claiming, among other things, that the conditions of confinement at the Center rendered the Washington Act punitive "as applied" to him in violation of the Double Jeopardy Clause. The Washington Supreme Court ruled that Turay's commitment was valid. *In re Turay*, 139 Wash. 2d 379, 986 P. 2d 790 (1999) (en banc). The court explained that in *Young*, it had concluded that the Act is civil. 139 Wash. 2d, at 415, 986 P. 2d, at 809. The court also noted that this Court had recently held Kansas' Sexually Violent Predator Act, nearly identical to Washington's Act,

to be civil on its face. *Ibid.* The Washington Supreme Court rejected Turay's theory of double jeopardy, reasoning that the double jeopardy claim must be resolved by asking whether the Act itself is civil. *Id.*, at 416–417, 986 P. 2d, at 810 (citing *Hudson* v. *United States*, 522 U. S. 93 (1997)). The court concluded that Turay's proper remedy for constitutional violations in conditions of confinement at the Center was his § 1983 action for damages and injunctive relief. 139 Wash. 2d, at 420, 986 P. 2d, at 812.

C

That brings us to the action before this Court. In 1994, after unsuccessful challenges to his confinement in state court, Young filed a habeas action under 28 U. S. C. § 2254 against the superintendent of the Center. Young contended that the Act was unconstitutional and that his confinement was illegal. He sought immediate release. The District Court granted the writ, concluding that the Act violated substantive due process, that the Act was criminal rather than civil, and that it violated the double jeopardy and *ex post facto* guarantees of the Constitution. *Young* v. *Weston*, 898 F. Supp. 744 (WD Wash. 1995). The superintendent appealed. While the appeal was pending, this Court decided *Kansas* v. *Hendricks*, 521 U. S. 346 (1997), which held that Kansas' Sexually Violent Predator Act, on its face, met substantive due process requirements, was nonpunitive, and thus did not violate the Double Jeopardy and *Ex Post Facto* Clauses. The Ninth Circuit Court of Appeals remanded Young's case to the District Court for reconsideration in light of *Hendricks*. 122 F. 3d 38 (1997).

On remand, the District Court denied Young's petition. Young appealed and the Ninth Circuit reversed and remanded in part and affirmed in part. 192 F. 3d 870 (1999). The Ninth Circuit affirmed the District Court's ruling that Young's confinement did not violate the substantive due process requirement that the State prove mental illness

and dangerousness to justify confinement. *Id.*, at 876. The Court of Appeals also left undisturbed the District Court's conclusion that the Act meets procedural due process and equal protection guarantees, and the District Court's rejection of Young's challenges to his commitment proceedings. *Id.*, at 876–877. Young did not seek a petition for a writ of certiorari to the Ninth Circuit for its decision affirming the District Court in these respects, and accordingly, those issues are not before this Court.

The Ninth Circuit reversed the District Court's determination that because the Washington Act is civil, Young's double jeopardy and *ex post facto* claims must fail. The "linchpin" of Young's claims, the court reasoned, was whether the Act was punitive "as applied" to Young. *Id.*, at 873. The court did not read this Court's decision in *Hendricks* to preclude the possibility that the Act could be punitive as applied. The court reasoned that actual conditions of confinement could divest a facially valid statute of its civil label upon a showing by the clearest proof that the statutory scheme is punitive in effect. 192 F. 3d, at 874.

The Court of Appeals reviewed Young's claims that conditions of confinement at the Center were punitive and did not comport with due process. *Id.*, at 875. Young alleged that for seven years, he had been subject to conditions more restrictive than those placed on true civil commitment detainees, and even state prisoners. The Center, located wholly within the perimeter of a larger Department of Corrections (DOC) facility, relied on the DOC for a host of essential services, including library services, medical care, food, and security. More recently, Young claimed, the role of the DOC had increased to include daily security "walk-throughs." Young contended that the conditions and restrictions at the Center were not reasonably related to a legitimate nonpunitive goal, as residents were abused, confined to their rooms, subjected to random searches of their rooms and units, and placed under excessive security.

Young also contended that conditions at the Center were incompatible with the Act's treatment purpose. The Center had a policy of videotaping therapy sessions and withholding privileges for refusal to submit to treatment. The Center residents were housed in units that, according to the Special Master in the *Turay* litigation, were clearly inappropriate for persons in a mental health treatment program. The Center still lacked certified sex offender treatment providers. Finally, there was no possibility of release. A court-appointed resident advocate and psychologist concluded in his final report that because the Center had not fundamentally changed over so many years, he had come to suspect that the Center was designed and managed to punish and confine individuals for life without any hope of release to a less restrictive setting. 192 F. 3d, at 875. See also Amended Petition for Writ of Habeas Corpus, Supplemental Brief on Remand, and Motion to Alter Judgment 4–5, 8–9, 11–12, 15, 20, 24–26, in No. C94–480C (WD Wash.), Record, Doc. Nos. 57, 155, and 167.

The Ninth Circuit concluded that "[b]y alleging that [the Washington Act] is punitive as applied, Young alleged facts which, if proved, would entitle him to relief." 192 F. 3d, at 875. The court remanded the case to the District Court for a hearing to determine whether the conditions at the Center rendered the Act punitive as applied to Young. *Id.*, at 876.

This Court granted the petition for a writ of certiorari, 529 U. S. 1017 (2000), to resolve the conflict between the Ninth Circuit Court of Appeals and the Washington Supreme Court. Compare 192 F. 3d 870 (1999), with *In re Turay*, 139 Wash. 2d 379, 986 P. 2d 790 (1999).

## II

As the Washington Supreme Court held and the Ninth Circuit acknowledged, we proceed on the understanding that the Washington Act is civil in nature. The Washington Act is strikingly similar to a commitment scheme we reviewed

four Terms ago in *Kansas* v. *Hendricks,* 521 U. S. 346 (1997). In fact, Kansas patterned its Act after Washington's. See *In re Hendricks,* 259 Kan. 246, 249, 912 P. 2d 129, 131 (1996). In *Hendricks,* we explained that the question whether an Act is civil or punitive in nature is initially one of statutory construction. 521 U. S., at 361 (citing *Allen* v. *Illinois,* 478 U. S. 364, 368 (1986)). A court must ascertain whether the legislature intended the statute to establish civil proceedings. A court will reject the legislature's manifest intent only where a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention. 521 U. S., at 361 (citing *United States* v. *Ward,* 448 U. S. 242, 248–249 (1980)). We concluded that the confined individual in that case had failed to satisfy his burden with respect to the Kansas Act. We noted several factors: The Act did not implicate retribution or deterrence; prior criminal convictions were used as evidence in the commitment proceedings, but were not a prerequisite to confinement; the Act required no finding of scienter to commit a person; the Act was not intended to function as a deterrent; and although the procedural safeguards were similar to those in the criminal context, they did not alter the character of the scheme. 521 U. S., at 361–365.

We also examined the conditions of confinement provided by the Act. *Id.,* at 363–364. The Court was aware that sexually violent predators in Kansas were to be held in a segregated unit within the prison system. *Id.,* at 368. We explained that the Act called for confinement in a secure facility because the persons confined were dangerous to the community. *Id.,* at 363. We noted, however, that conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals. *Ibid.* Moreover, confinement under the Act was not necessarily indefinite in duration. *Id.,* at 364. Finally, we observed that in addition to protecting the public, the Act also provided treatment for sexually violent predators. *Id.,*

at 365–368. We acknowledged that not all mental conditions were treatable. For those individuals with untreatable conditions, however, we explained that there was no federal constitutional bar to their civil confinement, because the State had an interest in protecting the public from dangerous individuals with treatable as well as untreatable conditions. *Id.*, at 366. Our conclusion that the Kansas Act was "nonpunitive thus remove[d] an essential prerequisite for both Hendricks' double jeopardy and *ex post facto* claims." *Id.*, at 369.

Since deciding *Hendricks*, this Court has reaffirmed the principle that determining the civil or punitive nature of an Act must begin with reference to its text and legislative history. *Hudson* v. *United States*, 522 U. S. 93 (1997). In *Hudson*, which involved a double jeopardy challenge to monetary penalties and occupational debarment, this Court expressly disapproved of evaluating the civil nature of an Act by reference to the effect that Act has on a single individual. Instead, courts must evaluate the question by reference to a variety of factors " 'considered in relation to the statute on its face' "; the clearest proof is required to override legislative intent and conclude that an Act denominated civil is punitive in purpose or effect. *Id.*, at 100 (quoting *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 169 (1963)).

With this in mind, we turn to the Court of Appeals' determination that respondent could raise an "as-applied" challenge to the Act on double jeopardy and *ex post facto* grounds and seek release from confinement. Respondent essentially claims that the conditions of his confinement at the Center are too restrictive, that the conditions are incompatible with treatment, and that the system is designed to result in indefinite confinement. Respondent's claims are in many respects like the claims presented to the Court in *Hendricks*, where we concluded that the conditions of confinement were largely explained by the State's goal to incapacitate, not to punish. 521 U. S., at 362–368. Nevertheless,

we do not deny that some of respondent's allegations are serious. Nor do we express any view as to how his allegations would bear on a court determining in the first instance whether Washington's confinement scheme is civil. Here, we evaluate respondent's allegations as presented in a double jeopardy and *ex post facto* challenge under the assumption that the Act is civil.

We hold that respondent cannot obtain release through an "as-applied" challenge to the Washington Act on double jeopardy and *ex post facto* grounds. We agree with petitioner that an "as-applied" analysis would prove unworkable. Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity under the Double Jeopardy and *Ex Post Facto* Clauses. Brief for Petitioner 30; Reply Brief for Petitioner 9. Unlike a fine, confinement is not a fixed event. As petitioner notes, it extends over time under conditions that are subject to change. The particular features of confinement may affect how a confinement scheme is evaluated to determine whether it is civil rather than punitive, but it remains no less true that the query must be answered definitively. The civil nature of a confinement scheme cannot be altered based merely on vagaries in the implementation of the authorizing statute.

Respondent contends that the Ninth Circuit's "as-applied" analysis comports with this Court's precedents. He points out that this Court has considered conditions of confinement in evaluating the validity of confinement schemes in the past. Brief for Respondent 11–16, 29 (citing *Hendricks, supra,* at 363; *Reno* v. *Flores,* 507 U. S. 292, 301–302 (1993); *United States* v. *Salerno,* 481 U. S. 739, 747–748 (1987); *Allen* v. *Illinois, supra,* at 373–374; *Schall* v. *Martin,* 467 U. S. 253, 269–273 (1984)). All of those cases, however, presented the question whether the Act at issue was punitive. Permitting respondent's as-applied challenge would invite an end run around the Washington Supreme Court's decision that the

Act is civil in circumstances where a direct attack on that decision is not before this Court.

JUSTICE THOMAS, concurring in the judgment, takes issue with our view that the question before the Court concerns an as-applied challenge to a civil Act. He first contends that respondent's challenge is not a true "as-applied" challenge because respondent does not claim that the statute "'by its own terms' is unconstitutional as applied ... but rather that the statute is not being applied according to its terms at all." *Post*, at 271. We respectfully disagree. The Act requires "adequate care and individualized treatment," Wash. Rev. Code § 71.09.080(2) (Supp. 2000), but the Act is silent with respect to the confinement conditions required at the Center, and that is the source of many of respondent's complaints, see *supra*, at 259–260. JUSTICE THOMAS next contends that we incorrectly assume that the Act is civil, instead of viewing the Act as "'*otherwise* ... civil,' or civil 'on its face.'" *Post*, at 270 (emphasis added by THOMAS, J.). However the Washington Act is described, our analysis in this case turns on the prior finding by the Washington Supreme Court that the Act is civil, and this Court's decision in *Hendricks* that a nearly identical Act was civil. Petitioner could not have claimed that the Washington Act is "otherwise" or "facially" civil without relying on those prior decisions.

In dissent, JUSTICE STEVENS argues that we "incorrectly assum[e]" that the Act is "necessarily civil," *post*, at 275, but the case has reached this Court under that very assumption. The Court of Appeals recognized that the Act is civil, and treated respondent's claim as an individual, "as-applied" challenge to the Act. The Court of Appeals then remanded the case to the District Court for an evidentiary hearing to determine respondent's conditions of confinement. Contrary to the dissent's characterization of the case, the Court of Appeals did not purport to undermine the validity of the Washington Act as a civil confinement scheme. The court did not conclude that respondent's allegations, if substanti-

ated, would be sufficient to refute the Washington Supreme Court's conclusion that the Act is civil, and to require the release of all those confined under its authority. The Ninth Circuit addressed only respondent's individual case, and we do not decide claims that are not presented by the decision below. *Matsushita Elec. Industrial Co.* v. *Epstein,* 516 U. S. 367, 379 (1996). We reject the Ninth Circuit's "as-applied" analysis for double jeopardy and *ex post facto* claims as fundamentally flawed.

## III

Our decision today does not mean that respondent and others committed as sexually violent predators have no remedy for the alleged conditions and treatment regime at the Center. The text of the Washington Act states that those confined under its authority have the right to adequate care and individualized treatment. Wash. Rev. Code § 71.09.080(2) (Supp. 2000); Brief for Petitioner 14. As petitioner acknowledges, if the Center fails to fulfill its statutory duty, those confined may have a state law cause of action. Tr. of Oral Arg. 6, 10–11, 52. It is for the Washington courts to determine whether the Center is operating in accordance with state law and provide a remedy.

State courts, in addition to federal courts, remain competent to adjudicate and remedy challenges to civil confinement schemes arising under the Federal Constitution. As noted above, the Washington Supreme Court has already held that the Washington Act is civil in nature, designed to incapacitate and to treat. *In re Young,* 122 Wash. 2d, at 18–25, 857 P. 2d, at 996–1000. Accordingly, due process requires that the conditions and duration of confinement under the Act bear some reasonable relation to the purpose for which persons are committed. *Foucha* v. *Louisiana,* 504 U. S. 71, 79 (1992); *Youngberg* v. *Romeo,* 457 U. S. 307, 324 (1982); *Jackson* v. *Indiana,* 406 U. S. 715, 738 (1972).

Finally, we note that a § 1983 action against the Center is pending in the Western District of Washington. See *supra,*

at 257. The Center operates under an injunction that requires it to adopt and implement a plan for training and hiring competent sex offender therapists; to improve relations between residents and treatment providers; to implement a treatment program for residents containing elements required by prevailing professional standards; to develop individual treatment programs; and to provide a psychologist or psychiatrist expert in the diagnosis and treatment of sex offenders to supervise the staff. App. 67. A Special Master has assisted in bringing the Center into compliance with the injunction. In its most recent published opinion on the matter, the District Court noted some progress at the Center in meeting the requirements of the injunction. *Turay* v. *Seling*, 108 F. Supp. 2d, at 1154–1155.

This case gives us no occasion to consider how the civil nature of a confinement scheme relates to other constitutional challenges, such as due process, or to consider the extent to which a court may look to actual conditions of confinement and implementation of the statute to determine in the first instance whether a confinement scheme is civil in nature. JUSTICE SCALIA, concurring, contends that conditions of confinement are irrelevant to determining whether an Act is civil unless state courts have interpreted the Act as permitting those conditions. By contrast, JUSTICE STEVENS would consider conditions of confinement at any time in order to gain "full knowledge of the effects of the statute." *Post*, at 277.

Whether a confinement scheme is punitive has been the threshold question for some constitutional challenges. See, *e.g., Kansas* v. *Hendricks*, 521 U. S. 346 (1997) (double jeopardy and *ex post facto*); *United States* v. *Salerno*, 481 U. S. 739 (1987) (due process); *Allen* v. *Illinois*, 478 U. S. 364 (1986) (Fifth Amendment privilege against self-incrimination). Whatever these cases may suggest about the relevance of conditions of confinement, they do not endorse the approach of the dissent, which would render the inquiry into the "ef-

fects of the statute," *post*, at 277, completely open ended. In one case, the Court refused to consider alleged confinement conditions because the parties had entered into a consent decree to improve conditions. *Flores*, 507 U. S., at 301. The Court presumed that conditions were in compliance with the requirements of the consent decree. *Ibid.* In another case, the Court found that anecdotal case histories and a statistical study were insufficient to render a regulatory confinement scheme punitive. *Martin*, 467 U. S., at 272. In such cases, we have decided whether a confinement scheme is punitive notwithstanding the inherent difficulty in ascertaining current conditions and predicting future events.

We have not squarely addressed the relevance of conditions of confinement to a first instance determination, and that question need not be resolved here. An Act, found to be civil, cannot be deemed punitive "as applied" to a single individual in violation of the Double Jeopardy and *Ex Post Facto* Clauses and provide cause for release.

The judgment of the United States Court of Appeals for the Ninth Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE SOUTER joins, concurring.

I agree with the Court's holding that a statute, "found to be civil [in nature], cannot be deemed punitive" or criminal "as applied" for purposes of the *Ex Post Facto* and Double Jeopardy Clauses. *Ante* this page. The Court accurately observes that this holding gives us "no occasion to consider . . . the extent to which a court may look to actual conditions of confinement and implementation of the statute to determine in the first instance whether a confinement scheme is civil in nature." *Ante*, at 266. I write separately to dissociate myself from any implication that this reserved point may be an open question. I do not regard it as such since, three

years ago, we rejected a similar double jeopardy challenge (based upon the statute's implementation "as applied" to the petitioners), where the statute had *not* yet been determined to be civil in nature, and where we *were* making that determination "in the first instance." See *Hudson* v. *United States*, 522 U. S. 93 (1997). To be consistent with the most narrow holding of that case (which, unlike this one, did *not* involve imposition of confinement), any consideration of subsequent implementation in the course of making a "first instance" determination cannot extend to *all* subsequent implementation, but must be limited to implementation of confinement, and of other impositions that are "not a fixed event," *ante*, at 263. That, however, would be a peculiar limitation, since even "fixed events" such as the imposition of a fine can, in their implementation, acquire penal aspects—exemplified in *Hudson* by the allegedly punitive size of the fines, and by the availability of reduction for "good-faith" violations, see 522 U. S., at 97–98, 104. Moreover, the language and the reasoning of *Hudson* leave no room for such a peculiar limitation.

In that case, the petitioners contended that the punitive nature of the statute that had been applied to them could be assessed by considering the aforementioned features of the fines. We flatly rejected that contention, which found support in our prior decision in *United States* v. *Halper*, 490 U. S. 435 (1989). *Halper*, we said, had erroneously made a "significant departure" from our prior jurisprudence, in deciding "to 'asses[s] the character of the actual sanctions imposed,' 490 U. S., at 447, rather than, as *Kennedy* [v. *Mendoza-Martinez*, 372 U. S. 144 (1963),] demanded, evaluating the 'statute on its face' to determine whether it provided for what amounted to a criminal sanction, *[id.]*, at 169." 522 U. S., at 101. The *Kennedy* factors, we said, "'must be considered in relation to the statute on its face,'" 522 U. S., at 100, quoting from *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 169 (1963). We held that "[t]he fact that petitioners'

'good faith' was considered in determining the amount of the penalty to be imposed in this case [a circumstance that would normally indicate the assessment is punitive] is irrelevant, as we look only to 'the statute on its face' to determine whether a penalty is criminal in nature." *Hudson, supra,* at 104, quoting *Kennedy, supra,* at 169. We repeated, to be sure, the principle that the statutory scheme would be criminal if it was sufficiently punitive "'either in purpose *or effect,*'" *Hudson, supra,* at 99 (emphasis added), quoting *United States* v. *Ward,* 448 U. S. 242, 248–249 (1980), but it was clear from the opinion that this referred to effects apparent upon the face of the statute.

The short of the matter is that, for Double Jeopardy and *Ex Post Facto* Clause purposes, the question of criminal penalty *vel non* depends upon the intent of the legislature;* and harsh executive implementation cannot "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co.* v. *United States,* 350 U. S. 148, 154 (1956), any more than compassionate executive implementation can transform a criminal penalty into a civil remedy. This is not to say that there is no relief from a system that administers a facially civil statute in a fashion that would render it criminal. The remedy, however, is not to invalidate the legislature's handiwork under the Double Jeopardy Clause, but to eliminate whatever excess in administration contradicts the statute's civil character. When, as here, a state statute is at issue, the remedy for implementation that does not comport with the civil nature of the statute is resort to the traditional state proceedings that challenge unlawful executive action; if those proceedings fail, and the state

_____

*\*Hudson* v. *United States,* 522 U. S. 93 (1997), addressed only the Double Jeopardy Clause. Since, however, the very wording of the *Ex Post Facto* Clause—"No State shall . . . *pass* any . . . ex post facto *Law*," U. S. Const., Art. I, § 10, cl. 1 (emphases added)—leaves no doubt that it is a prohibition upon *legislative* action, the irrelevance of subsequent executive implementation to that constitutional question is, if anything, even clearer.

courts authoritatively interpret the state statute as permitting impositions that are indeed punitive, then and only then can federal courts pronounce a statute that on its face is civil to be criminal. Such an approach protects federal courts from becoming enmeshed in the sort of intrusive inquiry into local conditions at state institutions that are best left to the State's own judiciary, at least in the first instance. And it avoids federal invalidation of state statutes on the basis of executive implementation that the state courts themselves, given the opportunity, would find to be ultra vires. Only this approach, it seems to me, is in accord with our sound and traditional reluctance to be the initial interpreter of state law. See *Railroad Comm'n of Tex.* v. *Pullman Co.*, 312 U. S. 496, 500–501 (1941).

With this clarification, I join the opinion of the Court.

JUSTICE THOMAS, concurring in the judgment.

We granted certiorari to decide whether "an *otherwise* valid civil statute can be divested of its civil nature" simply because of an administrative agency's failure to implement the statute according to its terms. Pet. for Cert. i (emphasis added). The majority declines to answer this question. Instead, it assumes that the statute at issue *is* civil—rather than "*otherwise* . . . civil," or civil "on its face." *Young* v. *Weston*, 122 F. 3d 38 (CA9 1997). And then it merely holds that a statute that is civil cannot be deemed the opposite of civil—"punitive," as the majority puts it—as applied to a single individual. *Ante*, at 267. In explaining this conclusion, the majority expressly reserves judgment on whether the manner of implementation should affect a court's assessment of a statute as civil in the "first instance." *Ante*, at 263, 267. I write separately to express my view, first, that a statute which is civil on its face cannot be divested of its civil nature simply because of the manner in which it is implemented, and second, that the distinction between a challenge in the

"first instance" and a subsequent challenge is one without a difference.

Before proceeding, it is important to clarify the issue in this case. The majority adopts the Ninth Circuit's nomenclature and refers to respondent's claim as an "as-applied" challenge, see, *e. g., ante,* at 263, but that label is at best misleading. Typically an "as-applied" challenge is a claim that a statute, *"by its own terms,* infringe[s] constitutional freedoms in the circumstances of [a] particular case." *United States* v. *Christian Echoes Nat. Ministry, Inc.,* 404 U. S. 561, 565 (1972) *(per curiam)* (emphasis added). In contrast, respondent's claim is not that Washington's Community Protection Act of 1990 (Washington Act or Act), Wash. Rev. Code § 71.09.010 *et seq.* (1992), "by its own terms" is unconstitutional as applied to him,[1] but rather that the statute is not being applied according to its terms at all.[2] Respondent essentially contends that the actual conditions of confinement, notwithstanding the text of the statute, are punitive and incompatible with the Act's treatment purpose. See *ante,* at 259–260.

---

[1] Respondent has made the claim that the terms of the Washington Act are criminal so that his confinement under the Act thus violates the Double Jeopardy and *Ex Post Facto* Clauses, but this claim was rejected below—first by the Washington Supreme Court, *In re Young,* 122 Wash. 2d 1, 18–23, 857 P. 2d 989, 996–999 (1993), and then by the Ninth Circuit, *Young* v. *Weston,* 192 F. 3d 870, 874 (1999)—and has not been presented to this Court.

[2] Disagreeing with this characterization, the majority contends that the statute is silent with respect to conditions of confinement. See *ante,* at 264. Even if the majority were correct—which it is not, see Wash. Rev. Code § 71.09.070 (requiring annual examinations of each person's mental conditions); § 71.09.080(2) (Supp. 2000) (requiring "adequate care and individualized treatment"); see also *In re Young, supra,* at 18–23, 857 P. 2d, at 996–999 (discussing similar provisions on conditions of confinement in 1990 version of Washington Act)—the question on which we granted certiorari expressly assumes that the statute "mandate[s]" the "conditions of confinement" that petitioner seeks. See Pet. for Cert. i.

A challenge, such as this one, to the implementation of a facially civil statute is not only "unworkable," as the majority puts it, *ante*, at 263, but also prohibited by our decision in *Hudson* v. *United States*, 522 U. S. 93 (1997). In *Hudson*, we held that, when determining whether a statute is civil or criminal, a court must examine the "statute on its face." *Id.*, at 101, quoting *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 169 (1963) (internal quotation marks omitted). In so holding, we expressly disavowed the approach used in *United States* v. *Halper*, 490 U. S. 435, 448 (1989), which evaluated the "actual sanctions imposed." 522 U. S., at 101, quoting *Halper, supra*, at 447 (internal quotation marks omitted). Respondent's claim is flatly inconsistent with the holding of *Hudson* because respondent asks us to look beyond the face of the Washington Act and to examine instead the actual sanctions imposed on him, that is, the actual conditions of confinement. Respondent argues, and the Ninth Circuit held, that *Hudson*'s reach is limited to the particular sanctions involved in that case—monetary penalties and occupational disbarment—and does not apply here, where the sanction is confinement. *Hudson*, however, contains no indication whatsoever that its holding is limited to the specific sanctions at issue. To the contrary, as we explained in *Hudson*, a court may not elevate to dispositive status any of the factors that it may consider in determining whether a sanction is criminal.[3] 522 U. S., at 101. One of these nondispos-

---

[3] The *Hudson* Court referred to the seven factors listed in *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144 (1963), as "useful guideposts": "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter;* (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." 522 U. S., at 99–100, quoting *Mendoza-Martinez, supra*, at 168–169 (internal quotation marks and alteration omitted).

itive factors is confinement. *Id.*, at 99 (stating that one of the factors is "[w]hether the sanction involves an affirmative disability or restraint," quoting *Mendoza-Martinez, supra,* at 168 (internal quotation marks omitted)). Yet elevating confinement to dispositive status is exactly what respondent asks us to do when he advances his distinction between confinement and other sanctions. Because *Hudson* rejects such an argument, respondent's claim fails.

An implementation-based challenge to a facially civil statute would be as inappropriate in reviewing the statute in the "first instance," *ante,* at 263, 267 (majority opinion), as it is here. In the first instance, as here, there is no place for such a challenge in the governing jurisprudence. *Hudson,* which requires courts to look at the face of the statute, precludes implementation-based challenges at any time. Moreover, the implementation-based claim would be as "unworkable," *ante,* at 263 (majority opinion), in the first instance as in later challenges. Because the actual conditions of confinement may change over time and may vary from facility to facility, an implementation-based challenge, if successful, would serve to invalidate a statute that may be implemented without any constitutional infirmities at a future time or in a separate facility. To use the majority's words, the validity of a statute should not be "based merely on vagaries in the implementation of the authorizing statute." *Ibid.*

And yet the majority suggests that courts may be able to consider conditions of confinement in determining whether a statute is punitive. *Ante,* at 263, 266. To the extent that the conditions are actually provided for on the face of the statute, I of course agree. Cf. *Hudson, supra,* at 101 (directing courts to look at " 'the statute on its face' "). However, to the extent that the conditions result from the fact that the statute is not being applied according to its terms, the conditions are *not* the effect of the statute, but rather the

effect of its improper implementation.[4] A suit based on these conditions cannot prevail.

\* \* \*

The Washington Act does not provide on its face for punitive conditions of confinement, and the actual conditions under which the Act is implemented are of no concern to our inquiry. I therefore concur in the judgment of the Court.

JUSTICE STEVENS, dissenting.

A sexual predator may be imprisoned for violating the law, and, if he is mentally ill, he may be committed to an institution until he is cured. Whether a specific statute authorizing the detention of such a person is properly viewed as "criminal" or "civil" in the context of federal constitutional issues is often a question of considerable difficulty. See *Kansas* v. *Hendricks*, 521 U. S. 346 (1997) (reversing, by a 5-to-4 vote, a decision of the Kansas Supreme Court invali-

---

[4] The dissent argues that, "under the majority's analysis, there is no inquiry beyond that of statutory construction," *post*, at 276 (opinion of STEVENS, J.). Although it is unclear to me whether the dissent is correct on this score, I hope that state and federal courts so interpret the majority opinion. For even if the majority opinion does not preclude venturing beyond the face of the statute, *Hudson* certainly does. See *Hudson*, 522 U. S., at 101 (holding that courts must examine a statute "'on its face'" and may not consider the "'actual sanctions imposed'"); *supra*, at 272.

To dispel any suggestion to the contrary, *ante*, at 261–262, 263, 266 (majority opinion); *post*, at 275 (STEVENS, J., dissenting), I note that *Kansas* v. *Hendricks*, 521 U. S. 346 (1997), does not provide support for implementation-based challenges. In *Hendricks*, "none of the parties argue[d] that people institutionalized under the . . . civil commitment statute are subject to punitive conditions." *Id.*, at 363. The viability of an implementation-based challenge was simply not at issue. And significantly, six months after *Hendricks*, we held in *Hudson* that inquiries into whether a statute is civil are restricted to the "face" of the statute. *Hudson, supra*, at 101. To the extent that *Hendricks* (or any previous opinion, *ante*, at 266 (majority opinion)) left a door open by not answering the implementation question, *Hudson* closed that door.

dating Kansas' Sexually Violent Predator Act); *Allen* v. *Illinois*, 478 U. S. 364 (1986) (upholding, by a 5-to-4 vote, Illinois' Sexually Dangerous Persons Act); *In re Young*, 122 Wash. 2d 1, 857 P. 2d 989 (1993) (en banc) (upholding, by a 5-to-4 vote, the provisions of Washington's Community Protection Act of 1990 dealing with sexually violent predators).

It is settled, however, that the question whether a state statute is civil or criminal in nature for purposes of complying with the demands of the Federal Constitution is a question of federal law. If a detainee comes forward with " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose *or effect* as to negate [the State's] intention' that the proceeding be civil, it must be considered criminal." *Allen*, 478 U. S., at 369 (quoting *United States* v. *Ward*, 448 U. S. 242, 248–249 (1980)) (emphasis added). See also *Hudson* v. *United States*, 522 U. S. 93, 100, 105 (1997). Accordingly, we have consistently looked to the conditions of confinement as evidence of both the legislative purpose behind the statute and its actual effect. See *Hendricks*, 521 U. S., at 361, 367–369; *Schall* v. *Martin*, 467 U. S. 253, 269–271 (1984); *Allen*, 478 U. S., at 369, 373–374. As we have acknowledged in those cases, the question whether a statute is in fact punitive cannot always be answered solely by reference to the text of the statute.

The majority in this case, however, incorrectly assumes that the Act at issue is necessarily civil. The issue the majority purports to resolve is whether an Act that is otherwise civil in nature can be deemed criminal in a specific instance based on evidence of its application to a particular prisoner. However, respondent Young's petition did not present that issue. Rather, consistent with our case law, Young sought to introduce evidence of the conditions of confinement as evidence of the punitive purpose and effect of the Washington statute. See Amended Pet. for Writ of Habeas Corpus 6 and Supp. Brief on Remand 2, 6, 10–11, in No. C94–480C (WD Wash.), Record, Doc. Nos. 57, 155. As a result, Young in no

way runs afoul of *Hudson* v. *United States*, 522 U. S. 93 (1997). Properly read, *Hudson* acknowledges that resolving whether an Act is civil or criminal in nature can take into account whether the statutory scheme has a punitive effect.[1] *Id.*, at 99. What *Hudson* rejects is an approach *not* taken by respondent—one that bypasses this threshold question in favor of a dispositive focus on the sanction actually imposed on the specific individual.[2] *Id.*, at 101–102.

To be sure, the question whether an Act is civil or punitive in nature "is initially one of statutory construction." *Ante*, at 261 (majority opinion). However, under the majority's analysis, there is no inquiry beyond that of statutory construction. *Ante*, at 263. In essence, the majority argues that because the constitutional query must be answered definitively and because confinement is not a "fixed event," conditions of confinement should not be considered at all, except in the first challenge to a statute, when, as a practical matter,

---

[1] In his concurrence, JUSTICE SCALIA concludes that, under the rule of *Hudson* v. *United States*, 522 U. S. 93 (1997), courts may *never* look to actual conditions of confinement and implementation of the statute to determine in the first instance whether a confinement scheme is civil in nature. See *ante*, at 267–268. JUSTICE THOMAS, concurring in the judgment, would take *Hudson* even further, precluding implementation-based challenges "at any time." *Ante*, at 273. However, for the reasons set out above, I believe that both concurrences misread *Hudson*. I also note that *Hudson* did not involve confinement. In cases that do involve confinement, this Court has relied on the principle that a statutory scheme must be deemed criminal if it was sufficiently punitive " 'either in purpose or effect.' " See *Kansas* v. *Hendricks*, 521 U. S. 346, 361, 367–369 (1997); *Schall* v. *Martin*, 467 U. S. 253, 269–271 (1984); *Allen* v. *Illinois*, 478 U. S. 364, 369, 373–374 (1986).

[2] In response to my dissent, the Court has made it clear that it is simply holding that respondent may not prevail if he merely proves that the statute is punitive insofar as it has been applied to him. The question whether he may prevail if he can prove that the statute is punitive in its application to everyone confined under its provisions therefore remains open. In sum, the Court has rejected the narrow holding of the Ninth Circuit, but has not addressed the sufficiency of the broadest claim that petitioner has advanced.

the evidence of such conditions is most likely *not* to constitute the requisite "clearest proof." This seems to me quite wrong. If conditions of confinement are such that a detainee has been punished twice in violation of the Double Jeopardy Clause, it is irrelevant that the scheme has been previously labeled as civil without full knowledge of the effects of the statute.[3]

In this case, Young has made detailed allegations concerning both the absence of treatment for his alleged mental illness and the starkly punitive character of the conditions of his confinement. If proved, those allegations establish not just that those detained pursuant to the statute are treated like those imprisoned for violations of Washington's criminal laws, but that, in many respects, they receive significantly worse treatment.[4] If those allegations are correct, the statute in question should be characterized as a criminal law for federal constitutional purposes. I therefore agree with the Court of Appeals' conclusion that respondent should be given the opportunity to come forward with the "clearest proof" that his allegations are true.

Accordingly, I respectfully dissent.

---

[3] In this case, those detained pursuant to Washington's statute have sought an improvement in conditions for almost seven years. Their success in the courts, however, has had little practical impact.

[4] Under such conditions, Young has now served longer in prison following the completion of his sentence than he did on the sentence itself.