TROTT, Circuit Judge,
concurring in part and dissenting in part:
My disagreement with my colleagues is limited to one issue. We agree that plaintiffs cannot seek damages in this lawsuit against state officials in their official capacities, and that plaintiffs cannot seek damages from the State either. So, what is left where the officials are concerned? A lawsuit against them for acts and omissions alleged to have been taken in the discharge of their official duties, but as individuals, not officials. It is here that I part company.
On this record, and under these circumstances, I conclude, with all respect to my colleagues, that these officials as individuals are clearly entitled to qualified immuni *1005 ty against both suit and damages — now, not later. In my view, the particulars and the contours of the alleged constitutional rights upon which the plaintiffs rely were not so clearly established at the times under scrutiny and at the level of specificity required such that a reasonable official hired by the state to cope with lawfully confined sexually violent predators subject to remedial treatment would have been aware that the conduct alleged violated constitutional bounds. Given the unsettled nature of the law in this area, a reasonable official could certainly have believed otherwise.
We decide this appeal with clear analytical guidance from the Supreme Court:
Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the “objective legal reasonableness” of the action, assessed in light of the legal rules that were “clearly established” at the time it was taken.
The operation of this standard, however, depends substantially upon the level of generality at which the relevant “legal rule” is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of “clearly established law” were to be applied at this level of generality, it would bear no relationship to the “objective legal reasonableness” that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harloiu would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy “the balance that our cases strike between the interests in vindication of citizens’ constitutional rights and in public officials’ effective performance of their duties,” by making it impossible for officials “reasonably [to] anticipate when their conduct may give rise to liability for damages.” It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been “clearly established” in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (emphasis added) (alteration in original) (internal citations omitted).
As my colleagues acknowledge, “this suit is unique, in that it is one of the first widespread class actions to challenge the conditions of detention for civilly confined SVPs.” It is not only unique, but it requires us to answer questions never before squarely addressed in this context. This factor alone should be enough to entitle these individual defendants to dismissal.
My colleagues hang their analytical hat on Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) for the proposition that “civilly detained persons must be afforded ‘more considerate *1006 treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.’ ” This is a nice general quote mined out of context from that case, but it gets us nowhere in pursuit of an answer to the central question of whether we have in this lawsuit violations of clearly established rights. Why? Because Youngberg dealt with the confinement for their own good of mentally defective persons. In contrast, and as recently recognized by the Supreme Court, sexually violent predators are confined in order to protect “the public from dangerous individuals with treatable as well as unbeatable conditions.” Seling v. Young, 531 U.S. 250, 262, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). In addition, the Court said that the case before it for decision “gives us no occasion to consider how the civil nature of a confinement scheme relates to other challenges, such as due process. ...” Id. at 266, 121 S.Ct. 727. It is little wonder, therefore, that my colleagues admit in connection with Youngberg that “it is not always clearly established how much more expansive the right of civilly detained persons are than those of criminally detained persons.” I disagree with my colleagues’ claim that “it follows logically [from Youngberg ], then, that the rights afforded prisoners set a floor for those [rights] that must be afforded SVPs, and that where Defendants violate a standard that is clearly established in the prison context, the violation is clearly established under the SVP scheme.” Where does this come from? It sounds new to me. Certainly it is not a proposition clearly established and controlling at the time relevant to this lawsuit. Prisoners have constitutional rights flowing from certain constitutional guarantees that do not apply out of the criminal context. Which clearly established “prisoner rights” are they talking about? I cannot find my colleagues’ bold assertion anywhere in any case before this one. Where is the required level of specificity required to hold these individuals constitutionally and monetarily responsible for their acts? It is nowhere to be found. Where is the fair warning to them as to the constitutional limits of their compulsory treatment programs? Expanding and extending some rights from other contexts and extrapolating others defies the purpose of the doctrine of qualified immunity.
The courts have yet to clarify how the Constitution protects sexually violent predators from various confinement and treatment modalities. Context is critical to the determination of whether a constitutional right has been established. This principle was confirmed by the Supreme Court in Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), a lawsuit filed by a mentally ill state prisoner complaining against treatment with anti-psychotic drugs against his will and without a judicial hearing. In holding that such treatment did not violate either substantive or procedural due process, the Court said, “The extent of a prisoner’s right under the Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate’s confinement.” Id. at 222, 110 S.Ct. 1028.
We read the same message in Parham v. J.R., 442 U.S. 584, 608, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979): “What process is constitutionally due cannot be divorced from the nature of the ultimate decision that is being made.” See also Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (“[D]ue process is flexible and calls for such procedural protections as the particular situation demands.”).
Noteworthy in Washington v. Harper was a holding by the Washington Supreme Court that the individual defendants were *1007 entitled to qualified immunity, 494 U.S. at 218 n. 5, 110 S.Ct. 1028. The case was allowed to proceed, but only to consider claims for injunctive and declaratory relief under § 1983 as well as state law — which is precisely what should happen here. It seems that we are now requiring doctors and other staff to consult not just with lawyers before they devise a procedure or treatment for a sexually violent predator, but with the courts.
The Supreme Court warned against this result in Parham, saying, “Due process has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer. Surely, this is the case as to medical decision, for neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgements.... The mode and procedure of medical diagnostic procedures is not the business of judges.” Id. at 607-08, 99 S.Ct. 2493 (internal citations and quotations omitted).
The penalty for not anticipating a court ruling will be individual liability. This unfortunate situation is precisely what the doctrine of qualified immunity is designed to avoid.
I take issue also with my colleagues’ assertion that because the facts are not yet developed, it is too early in this lawsuit to dismiss on qualified immunity. This claim misses the mark. As held repeatedly by the Supreme Court, qualified immunity is immunity from being sued, not just from damages. This principle explains (1) why the Court warned in Anderson against non-specific pleadings that allege violations of “extremely abstract rights,” 483 U.S. at 639, 107 S.Ct. 3034; and (2) the Court’s holding in Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) that, “[ujnless the plaintiffs allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.” The Court revisited this issue again in Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In the course of overruling a mistaken opinion by the First Circuit, the Court said,
The source of the First Circuit’s confusion was its mistaken conception of the scope of protection afforded by qualified immunity. Harlow and Mitchell make clear that the defense is meant to give government officials a right, not merely to avoid “standing trial,” but also to avoid the burdens of “such pretrial matters as discovery ..., as ‘[inquiries of this kind can be peculiarly disruptive of effective government.’ ”
Id. at 308, 116 S.Ct. 834 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))) (alterations in original). The Court, in reversing us in 1991 on this very issue, said, “[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.” Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
Finally, my colleagues express their caution “not to eviscerate the notice pleading standard” that the system generally uses to commence a lawsuit. I do not believe this caution is well suited to this context. Again, I reiterate that the question of qualified immunity requires prompt resolution. Anderson would seem to require pleadings more specific than the usual “notice” standard. At the very least, pleadings against state officials in their individual capacities must demonstrate an alleged violation of a particularized and relevant constitutional right which has been clearly established. Hunter v. Bryant also would seem to so require. To hold otherwise is *1008 to disserve a doctrine that calls for resolution at the “earliest possible stage” in litigation. Id. at 227, 112 S.Ct. 534.
The question remains, how specific must the right allegedly violated be defined in order to answer the question whether it was clearly established? Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) gives us a good example of the degree of specificity required. In Wilson, the Court concluded first that officers who took members of the media into a homeowner’s home to observe and to record the execution of an arrest warrant did so in clear violation of the Fourth Amendment. Nevertheless, the Court concluded also that the officials who did so were entitled to qualified immunity. The Court said that the appropriate question “is ... whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful....” Id. at 615, 119 S.Ct. 1692. Concluding that at the time of the violation the law was “at best undeveloped,” the Court said, “Given such an undeveloped state of the law, the officers in this case cannot have been ‘expected to predict the future course of constitutional law.’” Id. at 617, 119 S.Ct. 1692 (quoting Procunier v. Navarette, 434 U.S. 555, 562, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)).
From these precedents, I conclude that the proper question in this case is whether it was clearly established at the time of the events in this case that the Constitution prohibited these individual officials from engaging in any of the actionable behaviors attributed to them in connection with the management and treatment of sexually violent predators civilly confined under state law for treatment and for the protection of the public. After reviewing all the relevant cases and authorities, I answer this question in the negative.
Viewed in this light the analytical error made by my colleagues becomes quite apparent when they say,
Thus, there are two bodies of law from which we might draw “clearly established” law for qualified immunity purposes: first, where the SVPs claim a violation of a right that is clearly established even in the prison context, and second, where the SVPs claim a violation of a right that is clearly established for all civilly detained persons.
What this acknowledges is that we cannot find any clearly established substantive rights in the SVP context, so we have to borrow them from other areas, such as prison rights and the rights of persons civilly detained for their own good and who pose a demonstrated threat to society. An approach like this certainly works well when the question is what constitutional rights might these sexually violent predators have in this system, but it fails utterly when the issue is whether we hold individuals liable ex post facto for them actions.
This lawsuit should proceed so that specific answers can be found to the constitutional questions raised by the plaintiffs, but it should proceed only in connection with possible declaratory or injunctive relief. To do otherwise will deter government officials in the future from doing anything not to the liking of a sexually violent predator. The penalty for making a good faith mistake in an area of undeveloped law may be the costs of a lawsuit and the potential personal liability arising out of the official performance of a state job.