IN THE SUPREME COURT OF IOWA

 No. 12 / 04-1373

 Filed March 17, 2006

IN RE THE DETENTION OF ANTHONY S. BETSWORTH.

ANTHONY S. BETSWORTH,

 Appellant.

 Appeal from the Iowa District Court for Cherokee County, Frank B.
Nelson, Judge.

 Individual committed as a sexually violent predator appeals.
AFFIRMED.

 Mark Smith, First Assistant State Public Defender, and Steven L.
Addington, Assistant State Public Defender, for appellant.

 Thomas J. Miller, Attorney General, and Sharon K. Hall and Denise A.
Timmins, Assistant Attorneys General, for appellee, State of Iowa.

TERNUS, Justice.
 The appellant, Anthony Betsworth, suffers from an organic brain
disorder characterized by hypersomnolence (excessive sleeping), compulsive
hyperphagia (excessive food intake), and abnormally uninhibited sex drive.
He appeals from his commitment as a sexually violent predator under Iowa
Code chapter 229A (2003) on several grounds. Principally, he contends he
is not amenable to sex offender treatment, and therefore, his commitment
under chapter 229A is contrary to the terms of that statute and violates
his right to due process of law. Finding no basis for reversal, we affirm
the judgment of commitment.
 I. Background Facts and Proceedings.
 Until the summer of 2000, Anthony Betsworth displayed no significant
mental problems. He was married, had a daughter, and participated in
normal life activities. But in July 2000, a significant change abruptly
came over Betsworth. He began experiencing hypersomnia, sleeping multiple
days at a time. He also exhibited hyperphagia, eating excessively. And
finally, he began showing a much heightened degree of sexual expression and
sexual interest. After he began exposing himself in public, Betsworth was
civilly committed in August 2000 as “seriously mentally impaired” under
Iowa Code chapter 229, Iowa’s civil commitment statute for the mentally
ill.
 During his confinement in a secure facility, Betsworth became
increasingly sexually aggressive, grabbing female staff, rubbing his groin
against them, and grabbing at their breasts and crotch. Betsworth
frequently masturbated in front of others and verbally assaulted them,
asking questions of a sexual nature and asking for sexual favors. When
told to stop these inappropriate behaviors, he showed little response,
often laughing. In October 2001, Betsworth was convicted of simple assault
as a result of his conduct on the locked ward.
 Betsworth was placed in a transitional unlocked facility in 2002. In
January of that year, a staff member found him having sexual intercourse
with a female patient who lacked the ability to consent. This incident led
to Betsworth’s conviction for assault with intent to commit sexual abuse.
Although he spent some time in jail, he was eventually placed on probation.
 Shortly after his release from jail, Betsworth grabbed an employee in
the Woodbury County clerk of court office, pressing his genitalia into her
buttocks. He then grabbed her buttocks and shoulders, pressing her into
the counter so she could not move. Betsworth was charged and convicted of
simple assault for this incident. His prior probation was revoked, and he
was sent to prison.
 The State subsequently filed a petition to have Betsworth committed as
a sexually violent predator, which culminated in a jury trial on August 11,
2004. After the jury found him to be a sexually violent predator, the
respondent was committed by the court to the custody of the department of
human services (DHS) “for control, care, and treatment until such time as
his mental abnormality has so changed that he is safe to be placed in a
transitional release program or discharged.”
 II. Issues on Appeal.
 Betsworth raises several issues on appeal: (1) chapter 229A does not
apply to a person who suffers from a physiological mental defect and who is
not amenable to sex offender treatment; (2) chapter 229 provides the
exclusive procedure for the involuntary commitment of mentally ill persons;
(3) there was insufficient evidence to support the jury’s verdict that he
was a sexually violent predator because his offenses were not “predatory”;
and (4) his commitment under chapter 229A violates his statutory and due
process rights to meaningful treatment. We will first address Betsworth’s
arguments concerning the applicability of chapter 229A to a person in his
condition, then his challenge to the sufficiency of the evidence, and
finally his right-to-treatment claims.
 III. Applicability of Chapters 229A and 229.
 A. Standard of review. We review Betsworth’s claims regarding the
interpretation of chapter 229A and chapter 229 for the correction of errors
of law. See In re Detention of Cubbage, 671 N.W.2d 442, 444 (Iowa 2003).
In interpreting these statutes, our primary goal is to give effect to the
intent of the legislature. See State v. Iowa Dist. Ct. for Black Hawk
County, 616 N.W.2d 575, 578 (Iowa 2000). That intent is gleaned from the
language of “‘the statute as a whole, not from a particular part only.’ ”
State v. Iowa Dist. Ct. for Monroe County, 630 N.W.2d 778, 781 (Iowa 2001)
(citation omitted); accord In re Detention of Swanson, 668 N.W.2d 570, 574
(Iowa 2003). Because we presume the legislature intends “ ‘[a] just and
reasonable result,’ ” we interpret statues to avoid impractical or absurd
results. Iowa Dist. Ct. for Black Hawk County, 616 N.W.2d at 578 (citation
omitted); accord In re Detention of Swanson, 668 N.W.2d at 574.
 B. Evidentiary record. Before we discuss the applicability of the
civil commitment procedures set forth in chapters 229A and 229, we review
the testimony at trial concerning the nature of Betsworth’s mental
condition and the prospects for treatment.
 The State presented the testimony of Dr. Dennis Doren, a licensed
psychologist with extensive experience working with sex offenders. Based
on a short interview with the respondent and a review of the respondent’s
records, Dr. Doren concluded Betsworth suffered from an organically based
problem, in other words, a physiological abnormality of the brain.
Although Dr. Doren found it difficult to place a label on Betsworth’s
condition, the doctor was certain it was real. The witness opined
Betsworth’s condition was acquired or congenital or both.
 Dr. Doren believed Betsworth’s symptoms revealed very, very
significant volitional and emotional capacity problems. He explained the
term “volitional capacity” has to do with the process of making decisions
about one’s behavior. “Emotional capacity” refers to the ability to
demonstrate a concern for others. Due to these problems, Betsworth would
have serious difficulty controlling his behavior, according to this
witness. Dr. Doren also believed Betsworth’s condition predisposed him to
commit sexually violent offenses.
 Finally, the doctor discussed his risk assessment of Betsworth. Dr.
Doren employed three actuarial assessments in which Betsworth scored in the
high-risk category on two and in the moderate-risk category on the third.
The witness noted Betsworth had not participated in a sex offender
treatment program, and the treatment the respondent had been receiving
under his chapter 229 commitment had not been successful in lowering the
risk of another offense. The final circumstance considered by the doctor
was the fact that despite Betsworth’s institutionalization, the respondent
continued to offend within a controlled environment. Based upon all these
factors, Dr. Doren opined that Betsworth was at a high risk to reoffend.
 A staff member who had been assaulted twice by the respondent also
testified. She said that on both occasions, Betsworth laughed and showed
no remorse for his actions. A correctional counselor from the Newton
Correctional Facility, where Betsworth was confined at the time of trial,
gave similar testimony. This witness testified the respondent could be
disciplined every day for sexually inappropriate comments or for exposing
himself, “but it’s gotten to the point where nobody takes any disciplinary
action on him because it doesn’t mean anything.” Instead, Betsworth has
been placed in lock-up, and his contact with female staff members has been
limited due to his inability to control himself.
 Betsworth called Dr. Jason Smith, the administrator for the civil
commitment unit for sexual offenders in Cherokee, to testify. Dr. Smith
described the various treatment modalities available at the facility,
including cognitive therapy, relapse prevention, individual therapy, and
medication management. The witness acknowledged that, from the record, it
appeared the respondent would probably not benefit greatly from traditional
cognitive therapy. Therefore, he concluded, “[w]e would probably use more
of the behavioral components” in treating Betsworth. Dr. Smith
acknowledged it seemed the respondent would have difficulty in group
therapy, but stated he could not say for sure until he actually saw how the
respondent would manifest his symptoms in that setting. Finally, Dr. Smith
stated that all treatment, including medication management, would be
individualized for the respondent.
 C. Applicability of chapter 229A. Betsworth claims chapter 229A does
not apply to a person who suffers from a physiological mental defect and is
not amenable to sex offender treatment. We begin with a brief review of
the pertinent provisions of chapter 229A.
 Iowa Code chapter 229A sets up “a civil commitment procedure for the
long-term care and treatment of the sexually violent predator.” Iowa Code
§ 229A.1, para. 2. The statute defines a “sexually violent predator” as

 a person who has been convicted of or charged with a sexually violent
 offense and who suffers from a mental abnormality which makes the
 person likely to engage in predatory acts constituting sexually
 violent offenses, if not confined in a secure facility.

Id. § 229A.2(11). A “mental abnormality” is “a congenital or acquired
condition affecting the emotional or volitional capacity of a person and
predisposing that person to commit sexually violent offenses to a degree
which would constitute a menace to the health and safety of others.” Id. §
229A.2(5). This definition places no limitation on the nature of the
condition that may qualify as a “mental abnormality.” See In re Detention
of Barnes, 689 N.W.2d 455, 458-59 (Iowa 2004) (holding “the types of
conditions that can serve to establish a ‘mental abnormality’ are not
limited to certain recognized diagnoses”). Thus, the term “mental
abnormality” appears to include an organic condition such as that from
which Betsworth suffers, provided the condition meets the other
requirements of the statutory definition of “mental abnormality.” See id.
(“What is important is that the statute requires the condition to be
congenital or acquired and to affect the emotional or volitional capacity
of the person subject to commitment.”).
 Betsworth claims, however, that the definition of “mental
abnormality” cannot be read so broadly. He relies on section 229A.1, which
states in part:

 The general assembly finds that a small but extremely dangerous
 group of sexually violent predators exists which is made up of persons
 who do not have a mental disease or defect that renders them
 appropriate for involuntary treatment pursuant to the treatment
 provisions for mentally ill persons under chapter 229, since that
 chapter is intended to provide short-term treatment to persons with
 serious mental disorders and then return them to the community. In
 contrast to persons appropriate for civil commitment under chapter
 229, sexually violent predators generally have antisocial personality
 features that are unamenable to existing mental illness treatment
 modalities and that render them likely to engage in sexually violent
 behavior.

Iowa Code § 229A.1, para. 1 (emphasis added). Based on these legislative
findings, the respondent contends that persons who “have a mental disease
or defect” that causes their behavior are appropriate for commitment under
chapter 229, whereas offenders who have “antisocial personality features”
and a “mental abnormality” that influence their behavior are appropriately
committed under chapter 229A. The rationale for this distinction,
according to Betsworth, is that persons who have a mental disease or defect
cannot appreciate the wrongfulness of their conduct, and consequently,
cannot meaningfully participate in, or benefit from, cognitive behavioral
therapy. In contrast, sexually violent predators, he claims, “are fully
aware that what they have done is wrong, and can fully and meaningfully
participate in and benefit from cognitive behavioral treatment.”
 We are not persuaded the distinction suggested by the respondent was
intended by the legislature. In adopting chapter 229A, the legislature was
not concerned with “persons who do not have a mental disease or defect,”
but with “persons who do not have a mental disease or defect that renders
them appropriate for involuntary treatment pursuant to [chapter 229].” Id.
§ 229A.1, para. 1 (emphasis added). In other words, the sexually violent
predator was viewed as a person who has a mental disease or defect but who
could benefit from a more specialized treatment program than usually found
in institutions treating the general population of mentally ill persons.
Moreover, the legislature did not find that all sexually violent predators
have a mental disorder with antisocial personality features; it said,
“sexually violent predators generally have antisocial personality
features.” Id. (emphasis added). Thus, the definition of “mental
abnormality,” which does not exclude organic conditions and which does not
require the condition to include antisocial personality features, is fully
consistent with the legislative findings. Consequently, the district court
did not err in relying on the plain meaning of the statutory definitions in
concluding chapter 229A encompasses a condition such as that exhibited by
the respondent.
 We also disagree with the respondent’s thought that chapter 229A
requires that the person committed be amenable to the long-term cognitive
behavioral treatment principally used to treat sex offenders. It is true
the legislative findings refer to the “treatment modalities” for the
sexually violent predator being “very different from the traditional
treatment modalities available . . . for persons appropriate for commitment
under chapter 229.” See id. § 229A.1, para. 2. The legislature also
stated that “[t]he procedures . . . should . . . provid[e] treatment
services designed to benefit sexually violent predators who are civilly
committed [and] [t]he procedures should . . . encourage full, meaningful
participation of sexually violent predators in treatment programs.” Id.
But the legislature did not limit the types of treatment modalities or
programs that should or could be provided to persons committed under
chapter 229A. See id. § 229A.7(4) (stating “the respondent shall be
committed to the custody of the director . . . for control, care, and
treatment”). Thus, the State is free to provide individualized treatment
for sexually violent predators. Such treatment may or may not include
cognitive behavioral therapy and may or may not include treatment that
would also be available under chapter 229. We conclude, therefore, that
chapter 229A encompasses sexually violent predators who, like Betsworth,
will not benefit greatly from cognitive behavioral therapy and must instead
be treated with other modalities.
 D. Exclusivity of chapter 229. Betsworth also argues the civil
commitment statute for the mentally ill, chapter 229, provides the
exclusive procedure for the involuntary commitment of mentally ill persons.
 He relies on section 229.26, which states in pertinent part: “Sections
229.6 through 229.19 constitute the exclusive procedure for involuntary
hospitalization of persons by reason of serious mental impairment in this
state,” with certain exceptions not implicated here. Id. § 229.26
(emphasis added). Betsworth points out that although the legislature
excluded certain proceedings from the procedural requirements of chapter
229, chapter 229A commitment proceedings were not among the exceptions.
 Persons who are “seriously mentally impaired,” as defined in section
229.1(15), may be involuntarily hospitalized under chapter 229. Id. §
229.13(1). Sections 229.6 through 229.19 set forth the procedural steps
that must be followed for an involuntary commitment under chapter 229.
Thus, the statement in section 229.26 upon which the respondent relies
simply means that these procedures must be followed, with certain
exceptions, in order to involuntarily hospitalize a person based on the
person’s “serious mental impairment.” But Betsworth is not being committed
because he has a “serious mental impairment”; his commitment rests on a
“mental abnormality” that predisposes him to commit sexually violent
offenses, as defined in chapter 229A. Chapter 229A has its own procedures
for commitment. Thus, the “exclusive” procedures of chapter 229 are simply
not applicable to a commitment pursued under chapter 229A.
 IV. Sufficiency of the Evidence.
 A. Claim. Betsworth contends there was insufficient evidence to
support the jury’s verdict that he was a sexually violent predator because
his offenses were not “predatory,” as that term is defined in chapter 229A.
 This contention requires that we interpret the statutory definition, and
then determine whether there was sufficient evidence to support the jury’s
finding that the respondent was a sexually violent predator.
 B. Standards of review. We have already set forth the principles
that guide our interpretation of statutes. Our review of a challenge to
the sufficiency of the evidence is for the correction of errors of law.
See In re Detention of Swanson, 668 N.W.2d at 574. If there is substantial
evidence upon which a rational trier of fact could find the respondent to
be a sexually violent predator beyond a reasonable doubt, we are bound by
the jury’s finding. Id.

 “To determine whether the evidence was substantial, we consider the
 entirety of the evidence presented in a ‘light most favorable to the
 State, including all legitimate inferences and presumptions which may
 be fairly and reasonably deduced from the record.’ Evidence is not
 substantial if it raises only suspicion, speculation, or conjecture.”

Id. (citations omitted).
 C. Interpretation of statute. As noted above, a “sexually violent
predator” is defined in relevant part as a person “who suffers from a
mental abnormality which makes the person likely to engage in predatory
acts constituting sexually violent offenses.” See Iowa Code § 229A.1(11)
(emphasis added). The term “predatory” is defined as “acts directed toward
a person with whom a relationship has been established or promoted for the
primary purpose of victimization.” Id. § 229A.2(6). Betsworth claims the
evidence does not establish that he is likely to commit “predatory acts”
because (1) he does not form relationships with victims, and (2) he does
not have the capacity to form the required “purpose of victimization” due
to his mental condition.
 1. Relationship requirement. Chapter 229A does not define the term
“relationship.” The dictionary defines this word as “a state of affairs
existing between those having relations or dealings.” Webster’s Third New
International Dictionary 1916 (unabr. ed. rev. 2002). This definition has
no temporal requirement with respect to the length of the relations or
dealings between the offender and his victim or with respect to the quality
or quantity of interaction necessary to create a “relationship.”
Therefore, we think the legislature, in using the term “relationship,” was
simply referring to an offender’s engagement or dealing with the other
person.
 As noted above, we must interpret this statute in a manner consistent
with legislative intent and with the goal of avoiding an absurd result. A
primary purpose of this statute is the protection of the public. See Iowa
Code § 229A.1. If this court were to adopt a narrow interpretation of the
term “relationship,” as suggested by the respondent, sexual offenders whose
victims were strangers would not fall within the reach of chapter 229A.
This result would be illogical and absurd. We refuse to adopt an
interpretation of the statute that would produce this outcome.
 2. Purpose of victimization. We also reject the notion that some
level of mental capacity for the formation of an intent to victimize is
required by the “purpose of victimization” language of section 229A.2(6).
A “purpose” is simply “an object, effect, or result aimed at, intended, or
attained.” Webster’s Third New International Dictionary 1847. To
interpret the act as requiring intent would unjustifiably narrow the scope
of the statute, eliminating a group of sexual offenders—those whose mental
abnormality precludes the formation of an intent to do a particular act for
a specific purpose—who are just as dangerous to the public and just as much
in need of treatment as those offenders capable of forming an intent.
Thus, we interpret the statute to mean that an act is predatory if the
respondent’s engagement or dealing with another person is primarily aimed
at victimizing the person in a sexual manner.
 D. Sufficiency of the evidence. Dr. Doren, the State’s expert,
testified to his opinion that three of the four prior offenses by the
respondent were predatory in nature. The non-predatory offense was not
described in any detail in the record, but apparently involved Betsworth’s
wife. In the other three cases involving the staff member, the fellow
patient, and the clerk-of-court employee, the respondent had had very
little interaction with or was a stranger to the victim when he preyed upon
them. Dr. Doren opined that the offenses involving these victims were
predatory.
 The respondent took the stand and denied he had committed the
offenses of which he had been convicted. He did, however, admit to
thinking about sex all the time and to fantasizing about having sex with
any woman he could. A staff member who testified said Betsworth referred
to female staff members as “his bitches.”
 Betsworth relies heavily upon a statement by Dr. Doren that the
respondent’s “behaviors since July 2000 seem almost of an involuntary
nature.” When this comment is considered in the context of the entire
answer of which it is a part, it is apparent the doctor’s statement that
Betsworth’s conduct seemed almost involuntary was the doctor’s shorthand
way of expressing the very significant problem Betsworth has with his
volitional capacity. Therefore, we do not think this ambiguous comment
stands for the proposition that Betsworth’s actions lacked a purpose or
goal.
 After having reviewed the record, we conclude the evidence was
sufficient to support the jury’s finding that Betsworth’s dealings with his
victims were primarily aimed at using them for his own sexual purposes.
Therefore, the evidence was also adequate to support the finding that the
respondent was likely to engage in acts of a predatory nature beyond a
reasonable doubt. The fact that the respondent may be moved to engage in
such acts as a result of his brain disorder does not diminish the predatory
nature of his conduct.
 V. Right-to-Treatment Claims.
 A. Claims. Betsworth asserts he has a statutory and constitutional
due process right to effective treatment, or treatment that will cure or
improve his mental condition such that commitment will no longer be needed.
 He alleges there is no effective treatment for his physiologically-based
mental abnormality, and therefore, his commitment under chapter 229A
violates his right to effective treatment.
 B. Principles of review. We have previously stated the standards
governing our review of statutory interpretation issues. Our review of the
respondent’s constitutional claim is de novo in light of the totality of
the circumstances. See In re Detention of Williams, 628 N.W.2d 447, 451
(Iowa 2001). Statutes are presumed to be constitutional, so a party
claiming to the contrary has the burden to rebut this presumption. See In
re Detention of Garren, 620 N.W.2d 275, 278 (Iowa 2000).
 C. Statutory right to treatment. Section 229A.1 states, “The
procedures regarding sexually violent predators should reflect legitimate
public safety concerns, while providing treatment services designed to
benefit sexually violent predators who are civilly committed.” Iowa Code §
229A.1, para. 2. The goal of treatment is echoed in section 229A.7(4),
which provides that a person found to be a sexually violent predator must
be committed for “control, care, and treatment until such time as the
person’s mental abnormality has so changed that the person is safe to be
placed in a transitional release program or discharged.” Id. § 229A.7(4)
(emphasis added). The respondent claims these provisions afford him a
right to specialized treatment appropriate to the condition that
necessitates commitment. See Kansas v. Hendricks, 521 U.S. 346, 367, 117
S. Ct. 2072, 2084-85, 138 L. Ed. 2d 501, 518 (1997) (interpreting language
in Kansas act identical to that found in section 229A.7(4) as imposing “an
obligation to provide treatment” to committed persons). He claims his
commitment violates this statutory right to treatment because he will not
be amenable to the treatment regimens offered in the sex offender program.
 Betsworth’s claim is, at best, premature. The director of the sex
offender program testified at trial that an individualized treatment
program would be offered to Betsworth in an attempt to improve his ability
to control his deviant behaviors. There is nothing in the record to show
that treatment appropriate to the respondent’s particular condition will
not be undertaken by DHS. Therefore, Betsworth has failed to demonstrate a
violation of his right to treatment.
 D. Substantive due process right to treatment.
 “[D]ue process requires that the nature and duration of commitment
bear some reasonable relation to the purpose for which the individual is
committed.” Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858,
32 L. Ed. 2d 435, 451 (1972). Betsworth asserts his confinement bears no
reasonable relationship to the purpose for his commitment—treatment—because
his condition is not treatable. Therefore, he claims, his right to
substantive due process is violated. Even if we accept Betsworth’s
argument that his condition is untreatable, that circumstance would not
violate his due process rights.
 In Hendricks, the United States Supreme Court pointed out that it had
never held that a State could not “civilly detain[ ] those for whom no
treatment is available, but who nevertheless pose a danger to others.”
Hendricks, 521 U.S. at 366, 117 S. Ct. at 2084, 138 L. Ed. 2d at 517. The
court observed, that

 to require treatment as a precondition for civil confinement of the
 dangerously insane when no acceptable treatment existed . . . would
 obligate a State to release certain confined individuals who were both
 mentally ill and dangerous simply because they could not be
 successfully treated for their afflictions.

Id. at 366, 117 S. Ct. at 2084, 138 L. Ed. 2d at 518. In a later case, the
Court more directly stated dangerous persons with untreatable conditions
could be constitutionally confined. See Seling v. Young, 531 U.S. 250, 121
S. Ct. 727, 148 L. Ed. 2d 734 (2001). In Seling, the Court interpreted its
discussion in Hendricks as an explanation “that there [is] no federal
constitutional bar to [the] civil confinement [of sexually violent
predators with untreatable conditions], because the State [has] an interest
in protecting the public from dangerous individuals with treatable as well
as untreatable conditions.” Id. at 262, 121 S. Ct. at 734, 148 L. Ed. 2d
at 746. We hold, therefore, that Betsworth’s confinement on the basis of
his dangerousness as a sexually violent predator does not violate his due
process rights, notwithstanding the dismal prognosis for improvement in his
mental condition. See In re Blodgett, 510 N.W.2d 910, 916 (Minn. 1994)
(holding sexual predator’s confinement did not violate due process even
though treatment was “problematic”).
 VI. Summary and Disposition.
 The confinement of the respondent as a sexually violent predator is
appropriate under chapter 229A. An organic brain disorder such as that
from which the respondent suffers can constitute a “mental abnormality”
under the statute even though such a condition is unlikely to be treatable
by the cognitive behavioral therapy generally used for sexually violent
predators. In addition, the record evidence was sufficient to support the
jury’s finding that the respondent was likely to engage in predatory acts
in the future.
 The respondent’s claim that his right to treatment under chapter 229A
is violated due to the difficulty in treating his condition has no merit in
view of the evidence that an individualized treatment plan will be designed
for his particular needs. Moreover, even if the respondent’s condition is
untreatable, the State may constitutionally confine the respondent as a
sexually violent predator.
 AFFIRMED.