**[J-121B-2016][O.A.J.C. – Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 47 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 2169 MDA 2014 dated |
| v. | : | 8/7/15 affirming the order of the Court of |
| | : | Common Pleas of Cumberland County, |
| | : | Criminal Division, at No. CP-21-CR- |
| JOSE M. MUNIZ, | : | 0000903-2006 dated 10/14/14 |
| | : | |
| Appellant | : | |
| | : | ARGUED: December 6, 2016 |

**DISSENTING OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: July 19, 2017**

I agree with the analysis pertaining to those factors taken from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554 (1963), that are either of little weight or indicate that Pennsylvania's Sex Offender Registration and Notification Act ("SORNA") is not punitive. As to the other factors, although I recognize the significant burdens on offenders under SORNA, my reasoning closely tracks that developed in *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) ("*Williams II*"), and *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140 (2003). Accordingly, I respectfully dissent, as I believe that SORNA does not impose punishment and, thus, does not violate either the federal or state constitutions' *ex post facto* clauses.

Regarding the first *Mendoza-Martinez* factor, SORNA may be perceived as imposing some minimal restraint or disability insofar as it requires offenders to appear in

person to satisfy the reporting provisions. However, this Court has distinguished such minor impositions from those that effectuate a direct restraint or deprivation on the activities of the individual in the nature of imprisonment. *See Williams II*, 574 Pa. at 507, 832 A.2d at 974 (observing that the source cases cited by *Mendoza-Martinez* concerned direct deprivations or restraints, rather than ones that operated as secondary effects (citing *Mendoza-Martinez*, 372 U.S. at 168 n.22, 83 S. Ct. at 567 n.22)); *id.* (characterizing registration as a "potential collateral restraint"). In comparison, the monthly counseling sessions at issue in *Williams II* effectuated a greater restraint, mandating not only an in-person appearance, but that the offender remain and receive therapeutic treatment. Nonetheless, they were not viewed as "so onerous as to constitute an affirmative disability," even apart from the notion that this mandate was intended to rehabilitate sexually violent predators. *Id.* at 508, 832 A.2d at 974-75. The Opinion Announcing the Judgment of the Court ("OAJC") emphasizes that the counseling requirement was justifiable on rehabilitation grounds, but does not similarly acknowledge that the purpose behind in-person reporting is to assist the public in discovering reliable and verifiable information to protect itself from potential recidivists, *see* 42 Pa.C.S. §9799.10(5), a goal just as meritorious as rehabilitating an offender.

Further, the OAJC reasons that the finding by the *Smith* Court that the Alaska statute there did not require in-person updates constitutes an "important" distinction, which in turn led the Supreme Court to conclude, in part, that the statute was not punitive. OAJC, *slip op.* at 31. Critically, the Supreme Court did not premise its analysis on this observation; rather, it merely corrected an error in the facts relied upon by the reviewing court. *See Smith*, 538 U.S. at 101, 123 S. Ct. at 1151. Thus, I would not find that SORNA imposes the kind of affirmative restraint or disability suggestive of a punitive effect.

As to the second factor, assessing whether the sanction has been historically regarded as punishment, I am unpersuaded by the OAJC's primary shaming rationale, *i.e.*, that the "technological environment" has so changed that posting information on the internet results in a punishment. OAJC, *slip op.* at 34. Undoubtedly, internet access in private homes has grown in the years since the *Smith* decision; however, focusing on that narrow metric diminishes the central reasoning that the Supreme Court employed in finding that worldwide internet access to offender registry information did not constitute punishment, as well as overlooks internet accessibility available at that time in other places, such as public libraries and workplaces.[1] *See Smith*, 538 U.S. at 104-05, 123 S. Ct. at 1153-54 (observing that the internet data system was "passive," requiring an individual to "seek access to the information"); *State v. Petersen-Beard*, 377 P.3d 1127, 1134 (Kan.) ("*Smith* did not base its conclusion on some old-fashioned, dial-up modem/floppy disk notion of the World Wide Web; nor did it consider accessing offender information on the Internet [as] nothing more than a walk to the courthouse to thumb through publicly available paper files. *Smith*'s rationale withstands the more recent development of a mobile, smartphone Internet."), *cert. denied*, __ U.S. __, 137 S. Ct. 226 (2016); *see also Kammerer v. State*, 322 P.3d 827, 834-36 (Wyo. 2014). The Court further highlighted that making the registration system "easily accessible" comported with concerns pertaining to our highly mobile society. *Smith*, 538 U.S. at 105, 123 S. Ct. at 1153-54 (citing DONNA D. SCHRAM & CHERYL DARLING MILROY,

---

[1] Employing the OAJC's source (via now-Justice Donohue's concurring opinion in *Commonwealth v. Perez*, 97 A.3d 747, 765-66 (Pa. Super. 2014) (Donohue, J., concurring)), the United States Census Bureau indicates that over 61 million American households, or about 54%, had internet access at the time *Smith* was decided. *See* UNITED STATES CENSUS BUREAU, COMPUTER AND INTERNET USE IN THE UNITED STATES: 2003, at 2 (2005) https://www.census.gov/prod/2005pubs/p23-208.pdf. From my perspective, the increase to approximately 75% of households is not materially significant in categorizing the registration requirements as punishment.

COMMUNITY NOTIFICATION: A STUDY OF OFFENDER CHARACTERISTICS AND RECIDIVISM 13 (1995) (explaining that over one-third of recidivist sex offenses in the State of Washington occurred in jurisdictions different from where the previous offense took place)).

Regarding the comparison to probation conditions that the OAJC proffers, *see* OAJC, *slip op.* at 35-36 (quoting *Perez*, 97 A.3d at 763-64 (Donohue, J., concurring)), registration and reporting are the only required conditions imposed on registrants, albeit ones that may be viewed as onerous. *See* 42 Pa.C.S. §§9799.15, 9799.19, 9799.23(b), 9799.25. This is markedly different in both scope and nature from the litany of mandated probation provisions, which may include the following: reporting to an assigned probation officer; permitting home inspections; dispossessing firearms; maintaining employment; remaining in Pennsylvania; living in a specified residence or facility; refraining from visiting certain places; paying restitution and/or other costs; remaining at home during certain hours; reporting all arrests or citations; receiving approval to move; testing at random for drugs and alcohol; submitting to fingerprinting, photographing, and DNA sampling; complying with supervision assessments; yielding to individual or family counseling, medical or psychiatric treatment, and inpatient treatment; and acceding to any other special conditions imposed by the court. *See, e.g.*, *id.* §9754(c); County of Allegheny, Adult Probation Rules, https://www.alleghenycourts.us/criminal/adult_probation/rules.aspx. Thus, I disagree that SORNA's requirements materially parallel the wide-ranging restrictions and oversight that demarcate probation as a historically recognized punishment. To the degree that there are coextensive aspects, they do not constitute the "clearest proof" of punishment so as to override the Legislature's stated non-punitive intent. *Smith*, 538

U.S. at 92, 123 S. Ct. at 1147 (quoting *Hudson v. United States*, 522 U.S. 93, 100, 118 S. Ct. 488, 493 (1997)).

In terms of the scienter factor, I agree that past criminal conduct is "a necessary beginning point," OAJC, *slip op.* at 37 (quoting *Smith*, 538 U.S. at 105, 123 S. Ct. at 1154), and thus, this factor is of little weight.

Pertaining to the traditional aims of punishment, I agree with the parties that SORNA operates in some respect as a deterrent. *See, e.g.*, Brief for Commonwealth at 28-29. As the OAJC acknowledges, however, deterrence alone is an insufficient basis to find a sanction to be punishment. *See* OAJC, *slip op.* at 39 (citing *Smith*, 538 U.S. at 102, 123 S. Ct. at 1152); John F. Stinneford, *Punishment Without Culpability*, 102 J. CRIM. L. & CRIMINOLOGY 653, 679 (2012) ("[W]hen the Supreme Court says that a statute's purpose is punitive, it really means retributive. . . . [N]either a purpose to deter, incapacitate, nor to rehabilitate can transform a putatively civil statute into a criminal one. Only a retributive purpose can." (footnote omitted)); *Hudson v. United States*, 522 U.S. 93, 102, 118 S. Ct. 488, 494 (1997) ("We have . . . recognized that all civil penalties have some deterrent effect." (citations omitted)).

As for the OAJC's retribution analysis, its reliance on *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072 (1997), appears to directly conflict with the reasoning of the Court: "The Act's purpose is not retributive because it does not affix culpability for prior criminal conduct. Instead, such conduct is used solely for evidentiary purposes . . .." *Id.* at 362, 117 S. Ct. at 2082; *see also* Sandra G. Mayson, *Collateral Consequences and the Preventative State*, 91 NOTRE DAME L. REV. 301, 333 (2015) (suggesting that sanctions based on judgments of culpability should be viewed as punitive, while others premised on a judgment of risk, such as sex offender registration, should be classified as collateral non-punishments). Additionally, the *Smith* Court's reasoning on this point

is instructive, given that the information disclosed under Alaska's statute is nearly identical to that provided by an offender pursuant to SORNA, with the only exception appearing to be school addresses. *Compare* Alaska Stat. §12.63.010(b)(1-2), *with* 42 Pa.C.S. §9799.28(b)(1-8); *see also Smith*, 538 U.S. at 90, 123 S. Ct. at 1145-46 (listing the information disclosed via the Alaska statute). Notably, the *Smith* Court further explained that "[a]ny number of government programs might deter crime without imposing punishment" and "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Smith*, 538 U.S. at 102, 123 S. Ct. at 1152 (citations omitted).

Additionally, I do not regard registration imposed on predicate offenses lacking substantial terms of imprisonment as suggestive of punitiveness, since SORNA's tiered categories reflect the Legislature's judgment of the seriousness of the underlying conviction relative to future dangerousness. *See Petersen-Beard*, 377 P.3d at 1136 (observing that the differentiation between types of sex offenses in determining the frequency of in-person reporting, while burdensome, did not indicate a punitive effect); *Smith*, 538 U.S. at 102, 123 S. Ct. at 1152 ("The broad categories, . . . and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective.").

Moreover, as the OAJC seemingly acknowledges, with one exception (*i.e.*, Appellant's conviction for indecent assault without consent, *see* 18 Pa.C.S. §3126(a)(1)), those predicate offenses that implicate only a short prison sentence, or none at all, or otherwise do not contain a sexual component, are not presently at issue, since Appellant's conviction for indecent assault against a minor less than 13 years in age, *see* 18 Pa.C.S. §3126(a)(7), requires lifetime registration and quadrennial reporting

as a tier III offender.  *See* OAJC, *slip op.* at 39 n.20.  In this respect, I have significant reservations with the assertion that "each and every predicate offense is relevant" to assessing whether SORNA's reporting requirements for Appellant's underlying offenses constitute punishment.[2]  *Id.*  It seems to me that such an approach is not mandated by the relevant authority and is in substantial tension with standing jurisprudence.[3]

From my perspective, to the extent that the Supreme Court has directed that *ex post facto* challenges are to examine a statute "on its face," *see Mendoza-Martinez*, 372 U.S. at 169, 83 S. Ct. at 568, that command does not require a reviewing court to assess every predicate criminal conviction and associated potential sanctions.  The varied registration time periods and reporting frequencies, applicable to the different tiers, may result in divergent conclusions relative to the *Mendoza-Martinez* factors, particularly the excessiveness inquiry, as well as the ultimate disposition, when compared to distinct offenses.  *See, e.g.*, *supra* note 3.  Instead, the "on its face" view appears intended to avoid addressing the particularities of statutory implementation, *see Seling v. Young*, 531 U.S. 250, 263, 121 S. Ct. 727, 735 (2001) ("[T]he civil nature of a [statutory] scheme cannot be altered based merely on vagaries in the implementation of the authorizing statute."), rather than a reference to the conventionally understood notion of a "facial" challenge, *see Smith*, 538 U.S. at 106, 123 S. Ct. at 1154 (Thomas,

---

[2]  In accord with my understanding of the proper approach to *ex post facto* reviews, as discussed further herein, the obligations imposed pursuant to Appellant's tier I designation are properly subject to examination, but only as compared to the actual predicate offense that triggered those requirements.

[3]  Nonetheless, I agree that there appears to be some disconnect between those offenses that do not have a direct sexual element and requiring registration as a sex offender.  *See* OAJC, *slip op.* at 39.  However, as discussed hereinafter, resolution of such a claim must be addressed within the confines of a case implicating those crimes.

J., concurring) ("I . . . reiterate that 'there is no place for [an implementation-based] challenge' in our *ex post facto* jurisprudence. . . . [T]he determination whether a scheme is criminal or civil must be limited to the analysis of the obligations actually created by statute." (quoting *Seling*, 531 U.S. at 273, 121 S. Ct. at 740 (Thomas, J., concurring in judgment)))).[4] *Cf.* Todd W. Wyatt, Comment, *Double Jeopardy and Punishment: Why an As Applied Approach, As Applied to Separation of Powers Doctrines, Is Unconstitutional*, 24 SEATTLE U. L. REV. 107, 111 (2000) (contending that an as-applied approach to punishment determinations would permit the executive branch to render a statute unconstitutional via the manner that it is implemented). In this respect, I am of the view that the present matter is limited to reviewing the requirements imposed on Appellant by virtue of the offenses for which he was convicted, *i.e.*, the two counts of indecent assault.

Accordingly, I do not read *Mendoza-Martinez* or its progeny as entirely eviscerating the long-standing preference for as-applied challenges, *see* Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 WM. & MARY BILL RTS. J. at 658 ("[T]he law strongly favors as-applied challenges . . .."), or as diminishing other limitations on constitutional challenges. As to the latter, it appears that searching SORNA's provisions for any potential constitutional infringement, regardless of applicability to Appellant, conflicts with the requirements of standing, which mandate the complainant be adversely affected by the statutory provisions he seeks to challenge. *See Am. Booksellers Ass'n, Inc. v. Rendell*, 332 Pa. Super. 537, 554, 481 A.2d 919, 927 (1984). Thus, Appellant is limited to contesting only those aspects of SORNA implicated by his actual convictions. *See Van Doren v. Mazurkiewicz*, 695 A.2d 967, 972 n.7 (Pa.

---

[4] Generally, a facial challenge asserts that the statute cannot be applied to any set of facts in a constitutional manner. *See* Alex Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 WM. & MARY BILL RTS. J. 657, 657 (2010).

Cmwlth. 1997) (explaining that, although petitioner could challenge registration requirements under a prior sex offender statute, he could not contest other provisions that were not triggered by his conviction); *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) ("[M]ere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue . . .." (internal quotation marks and citation omitted)).

As a final observation relative to the "on its face" review, to the degree that the reporting requirements of SORNA could be found unconstitutional relative to certain predicate offenses, those provisions may be severed from the constitutional portions of the statute. *See Williams II*, 574 Pa. at 527, 832 A.2d at 986 (severing, as excessive, the life imprisonment penalty for failure to comply with reporting requirements of Megan's Law II); 1 Pa.C.S. §1925. Accordingly, I would limit review to Appellant's convictions and the applicable SORNA registration and reporting requirements.

On the whole, in light of the tiered reporting scheme, the lack of retributive effect, and the disclosure of information in line with that addressed in *Smith*, I am of the view that SORNA's application to Appellant's conviction does not operate to promote the traditional aims of punishment.

Next, I agree with the OAJC that the already-a-crime factor is of little significance, since prior criminal conduct is a prerequisite to SORNA's application. *See Smith*, 538 U.S. at 105, 123 S. Ct. at 1154.

In assessing whether there is an alternative purpose to which the statute may be rationally connected, my view largely comports with that of the OAJC, *i.e.*, that there is plainly a rational connection between SORNA and public safety and health. Further, I similarly acknowledge that there is a growing body of evidence suggesting that the recidivist premise for sex offender registration laws may not be as settled as once

believed. Nonetheless, it seems evident that these types of policy judgments are best directed to the legislative branch. *See Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632, 653, 57 A.3d 1232, 1245 (2012) ("[W]e have often recognized the superior tools and resources available to the Legislature in making social policy judgments, including comprehensive investigations and policy hearings."). I also emphasize that SORNA's "rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." *Smith*, 538 U.S. at 102, 123 S. Ct. at 1152 (quoting *United States v. Ursery*, 518 U.S. 267, 290, 116 S. Ct. 2135, 2148 (1996)). Accordingly, this factor strongly weighs in favor of finding that the statute does not impose punishment.

Relative to the final factor -- whether the statute is excessive in relation to the alternative purpose assigned -- I agree in part with the OAJC that, as applied to a few of the offenses, there is a significant concern of over-inclusiveness, given that the crimes do not relate to any particular sexual act by their terms. *See* OAJC, *slip op.* at 45 (citing 18 Pa.C.S. §2902 (unlawful restraint); §2903 (false imprisonment); §2904 (interference with custody of child)); *see also supra* note 3.[5] However, as discussed previously, this matter does not implicate any of those crimes. Nonetheless, I do share with the OAJC some concern that there is no provision to allow a lifetime registrant to demonstrate that he is no longer a risk to others. Thus, as to this factor, there is at least a minimal indication of punitiveness.

---

[5] The OAJC includes within its non-sexual offenses designation 18 U.S.C. §2424, pertaining to the filing of a factual statement about an alien individual. However, a review of that federal statute reveals that it relates to housing a person "for the purpose of prostitution, or for any other immoral purpose . . .." *Id.* Thus, I disagree that there is no sexual component.

Based on the *Mendoza-Martinez* factors, which I view as almost uniformly suggesting a non-punitive effect, I would conclude that SORNA's registration requirements do not constitute punishment and do not violate the federal *ex post facto* clause.[6]

---

[6] Although the *Mendoza-Martinez* factors are the prevailing framework for determining the punitive effect of a statutory enactment, a number of scholars and jurists have expressed significant reservations with their use relative to assessing collateral consequence laws, such as SORNA. *See* David A. Singleton, *What Is Punishment?: The Case for Considering Public Opinion Under Mendoza-Martinez*, 45 SETON HALL L. REV. 435, 442 (2015); Mayson, *Collateral Consequences and the Preventative State*, 91 NOTRE DAME L. REV. at 332-33. Specifically, one commentator explains that the factors are too deferential to legislatures (given the *ex post facto* clause's role in safeguarding liberty), are highly subjective and manipulable, and rely in part on circular logic (*e.g.*, a finding that a sanction is a historical form of punishment effectively resolves the initial punishment query without need to consider the other factors). *See* Singleton, *What Is Punishment?*, 45 SETON HALL L. REV. at 443-44.

Commentators and jurists have also proposed alternative tests to determine whether a sanction is punitive. *See, e.g.*, Aaron Xavier Fellmeth, *Civil and Criminal Sanctions in the Constitution and Courts*, 94 GEO. L.J. 1, 41 (2005) ("[A] measure having the systemic effect of deterring or punishing a forbidden act should . . . always be considered criminal . . ., while a measure having the systemic effect of providing remediation to a party allegedly injured by an act or omission of the defendant should always be considered a civil one."); Mayson, *Collateral Consequences and the Preventative State*, 91 NOTRE DAME L. REV. at 333 (suggesting that collateral consequences should be conceived of as falling along a "punishment-prevention spectrum . . . according to whether they claim primary authorization from a judgment of culpability [(punishment)] or a judgment of risk [(prevention)]"); *Smith*, 538 U.S. at 112, 123 S. Ct. at 1157 (2003) (Stevens, J., dissenting) ("The sanctions [are criminal if they] (1) constitute a severe deprivation of the offender's liberty, (2) are imposed on everyone who is convicted of a relevant criminal offense, and (3) are imposed only on those criminals."). However, the United States Supreme Court has offered no indication that it is contemplating abandoning the *Mendoza-Martinez* model, and the parties here do not advocate for any such change.

Nonetheless, I emphasize that, although collateral consequences, of whatever form, may not be deemed punishment for constitutional or other purposes, such a determination is made despite the seemingly widespread recognition that they are not (continued…)

As for the state constitution, I agree with the OAJC to the extent that it generally finds a broader protection for reputational interests than offered by the federal constitution. *See* PA. CONST. art. I, §1. However, my view diverges from the notion that SORNA operates punitively with respect to Appellant's reputation. As Justice Wecht explains in his concurring opinion, the impact of the law in this regard is already subsumed in considering whether the sanction is historically regarded as punishment and whether it promotes the traditional aims of punishment. *See* Concurring Opinion, *slip op.* at 15 (quoting *Mendoza-Martinez*, 372 U.S. at 168, 83 S. Ct. at 567). As discussed above, the manner in which factual information is made accessible pursuant to SORNA has been rejected as constituting the type of harassment or embarrassment that reflects colonial era shaming punishments. *See Smith*, 538 U.S. at 98, 123 S. Ct. at 1150 ("Any initial resemblance to early punishments is . . . misleading. . . . [P]ublic shaming, humiliation, and banishment . . . involved more than the dissemination of information."). Thus, I remain unpersuaded that the Pennsylvania Constitution's

---

(…continued)

simply benign to those who are subject to them. *See* Sandra G. Mayson, *Collateral Consequences and the Preventive State*, 91 NOTRE DAME L. REV. at 303–04 ("[C]ourts have reached a defensible result in declining to [categorize collateral consequences as punishment]. Where they have erred is in assuming that, as mere regulation, [collateral consequences] are benign. On the contrary, laws that restrict certain people's liberty on the basis of their perceived propensity to commit future crimes raise both moral and constitutional concerns. Predictions of future crime are highly inaccurate; they tend to track stereotypes, and factors used as proxies for future risk both reflect and perpetuate race and class inequality. More fundamentally, predictive restraint contravenes the liberal ideal that the state may not preemptively restrain people who are responsible actors to stop them from committing future crimes."). However, "'punitive' in the experiential sense of the word" does not equate to punishment for purposes of invalidating a legislative enactment on constitutional grounds, which ultimately appears to be reflected in the *Mendoza-Martinez* framework. *Id.* at 334.

broader general protection of reputation interests results in the finding that SORNA is punishment.