THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. PAUL E. REXROAT, Respondent-Appellant.

Third District    No. 3—03—0835

Opinion filed December 23, 2004.

James T. Reilly (argued), of M.G. Gulo & Associates, Ltd., of Streator, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Gary K. Chan (argued) and Linda Woloshin, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Under the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 *et seq.* (West 2002)), Paul Rexroat was committed to the Department of Human Services (DHS) for control, care, and treatment in a secured facility. He subsequently filed a petition for conditional release, citing a court-appointed doctor's recommendation that he be transferred to a DHS mental health facility for appropriate treatment. He also filed a motion challenging the constitutionality of the Act. Both pleadings were denied without evidentiary hearings, and Rexroat filed this appeal.

## BACKGROUND

On February 24, 2000, Rexroat signed an admission in open court stating that he was a sexually violent person under the Act. The court thus committed him to the custody of the DHS for institutional care in a secure facility. Other than identifying such care, the court did not provide any guidelines or goals for Rexroat's treatment. He is currently held in a facility located in Joliet (the only DHS facility designated for sexually violent persons), although the DHS does have other facilities for rendering mental health treatment.

Pursuant to the Act's requirement that Rexroat be periodically reexamined (725 ILCS 207/55 (West 2002)), the court appointed Doctor Robert Chapman to examine him on March 14, 2003. Doctor Chapman made diagnoses of depression, borderline personality disorder, antisocial personality disorder, and adult attention deficit disorder. In his written report, he opined that Rexroat was not receiving appropriate treatment in the Joliet facility, and thus he recommended a

transfer to another facility where appropriate treatment could be rendered. In the doctor's own words:

"Paul E. Rexroat is currently and since 1999 (4 years ago), has been receiving none of the proper competent psychiatric treatment required. Rather than obsess about his alleged sexual deviant thoughts and opining about his motivation such as to 'gain attention,' he must first be provided with competent psychiatric treatment to render him mentally stable enough to benefit from sex offender treatment if indeed there is any benefit. It appears the [DHS] Treatment and Detention Facility Program is a one trick pony that does not have competence or apparent interest in treating Paul E. Rexroat's mental disorder as envisioned by this Sexually Violent [Persons Commitment] Act.

It is therefore my opinion he be transferred to a [DHS] mental health treatment facility where there is competent treatment, personnel, and therapeutic environment which permits treatment and relief of his symptoms of volatile mood, affect, and psychotic episodes. At that time he may be able to benefit from sex offender treatment."

Rexroat subsequently filed a petition for conditional release, citing Doctor Chapman's report and requesting a transfer to a DHS mental health treatment facility. The matter proceeded to a scheduled hearing date, but on that date Rexroat advised that he also wished to file a motion challenging the constitutionality of the Act. The judge thus reserved his ruling on the conditional release issue until Rexroat presented his constitutional arguments.

On October 16, 2003, the judge heard arguments on both issues. Regarding the constitutional issue, Rexroat sought to testify about the factual allegations in his motion (allegedly punitive conditions in the Joliet facility). The judge noted that the supreme court had already declared the Act constitutional (see *In re Detention of Varner*, 207 Ill. 2d 425 (2003)) and that he was not going to "reinvent the wheel." Rexroat argued that his motion was distinguishable because he sought a declaration that the Act was unconstitutional "as applied." Nevertheless, the judge refused to "conduct a hearing whose end is pretty obvious." Accordingly, he denied Rexroat's motion challenging the constitutionality of the Act.

The judge also denied Rexroat's petition for conditional release, stating:

"I don't think I have the power to order his transfer within the [DHS] like that. The decision that this Court can make is whether or not he is to remain in a facility such as where he is now that is run by the [DHS] or he be given the conditional release with a program. As a good analogy, I would think would be like a halfway

house type of a situation. That I could order. But all the doctor is recommending is that there be a lateral transfer within the [DHS] which is something that would better be served by those people that are in the [DHS] itself to make that decision. I don't think I can tell them to do that. It's a question of whether or not he remains where he is in their programs or the conditional release. And this report certainly doesn't call for conditional release."

Rexroat filed this appeal from the judge's order. Particularly, Rexroat claims the judge erred in not allowing evidentiary hearings on his two pleadings.

## DISCUSSION

■ When a court's authority to act is controlled by statute, the court is governed by rules of limited jurisdiction and must proceed within the strictures of the statute. *In re M.M.*, 156 Ill. 2d 53 (1993). Thus, in the instant case, the circuit court was bound by the strictures of the Act. Under the Act, the court had only two options regarding Rexroat's commitment: institutional care in a secure facility, or conditional release. See 725 ILCS 207/40(b)(2) (West 2002). The legislature's use of the word "or" between these options signals that they are different, and thus that conditional release does not involve placement in a secure facility. *Cf.* 725 ILCS 207/60(f) (West 2002) (conditional release occurs "in the community"); 725 ILCS 207/40(b)(4) (West 2002) ("[b]efore a person is placed on conditional release ***, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing").

Since Rexroat's request—even if granted—would not have removed him from care in a secure facility, he was not asking for conditional release at all. In his oral argument before this court, Rexroat acknowledged that he did not request a release from institutional care in a secure facility. Instead, he asked the trial court to order that he be transferred to a different DHS facility for appropriate treatment. We find no reversible error in the judge's ruling on this issue.

Regarding cases where a sexually violent person is committed to a secure facility, the Act states: "The [DHS] shall *** provide by rule for the nature of the facility, the level of care to be provided in the facility, and the custody and discipline of persons placed in the facility." 725 ILCS 207/50(b) (West 2002). This provision illustrates that decisions about the nature of the secure facility belong to the DHS, not to circuit courts. Generally, a trial court lacks authority to dictate the manner in which an agency of the executive branch carries out its statutory duties. See *In re R.V.*, 288 Ill. App. 3d 860 (1997); *cf. In re Detention of*

*Hayes*, 321 Ill. App. 3d 178 (2001) (circuit court could not order DHS to employ a particular doctor to oversee respondent's treatment). The instant judge's order reflects these principles.

Both parties cite *Hayes*, where the Second District held that a judge had authority to order the DHS to provide treatment in accordance with the report of an expert medical psychiatrist. However, the court also held that the judge lacked authority to order the DHS to employ the psychiatrist to oversee the respondent's treatment. The court summarized its holding as follows:

"[T]he Act contemplates an interplay between the courts and the [DHS] and an individualized plan of treatment for sexually violent persons committed to a secure facility. Accordingly, the trial court may make findings of fact regarding an individual's mental condition and enter reasonable orders regarding the types of treatment required. However, it is the [DHS's] duty under the Act to determine the nature of the secure facility and the manner in which treatment will be provided to those individuals detained or committed. *** In other words, the trial court may identify the goals for a sexually violent person's treatment, but the [DHS] has the duty of determining the means for achieving those goals." *Hayes*, 321 Ill. App. 3d at 196.

In the instant case, Rexroat asked the trial court to do more than identify goals for his treatment; he wanted an order telling the DHS where to hold him (thus encroaching on the DHS's statutory authority to determine the nature of the facility). Accordingly, we see no reversible error in the judge's decision.

In so holding, we note that Rexroat still has viable options under the *Hayes* decision. Although the circuit court cannot order the DHS to transfer him to a different facility, the court may establish goals (based on recommendations from Doctor Chapman) for the treatment he receives at the Joliet facility. A petition fashioned in this manner would avoid the problems discussed above. As the *Hayes* court noted, the Act contemplates individualized consideration, by circuit courts, of treatment needs for sexually violent persons. See *Hayes*, 321 Ill. App. 3d at 194. Although *Hayes* dealt only with an initial commitment order, we see no reason why a sexually violent person cannot petition for changes in his treatment based on recommendations stemming from a mandatory reexamination.

## Constitutionality of the Act

■ Next, Rexroat claims the judge erred in denying his motion challenging the constitutionality of the Act. Specifically, Rexroat claims the judge erred in not allowing him to testify. According to his brief: "The purpose for testimony by [Rexroat] was to demonstrate that the

extremely punitive conditions of confinement serve[ ] to impose additional criminal punishment upon [him] after he has served a full criminal sentence."

Such a claim failed in *Seling v. Young*, 531 U.S. 250, 148 L. Ed. 2d 734, 121 S. Ct. 727 (2001). According to Rexroat, rather than rearguing the claim raised in *Seling*, he is trying to access other remedies mentioned by the Supreme Court in its opinion. For instance, when alluding to a state cause of action, the Court noted: "The text of the Washington Act states that those confined under its authority have the right to adequate care and individualized treatment." *Seling*, 531 U.S. at 265, 148 L. Ed. 2d at 748, 121 S. Ct. at 736. As discussed above, this observation applies equally under the Illinois Act. See *Hayes*, 321 Ill. App. 3d 178. Accordingly, Rexroat may seek appropriate relief through a properly drafted petition. Moreover, in *Seling* the Supreme Court noted that a federal civil rights action is available to sexually violent persons.

## CONCLUSION

For the foregoing reasons, the judgment of the La Salle County circuit court is affirmed.

Affirmed.

McDADE and SCHMIDT, JJ., concur.