2025 IL App (1st) 231148

FIRST DISTRICT,
SIXTH DIVISION
January 31, 2025

No. 1-23-1148

| | | |
|---|---|---|
| *In re* COMMITMENT OF VINCENT PIERONI | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 05 CR 80008 |
| Vincent Pieroni, | ) ) ) | |
| Respondent-Appellant | ) ) | Honorable Nicholas Kantas and Erica L. Reddick, Judges Presiding. |
| (The Department of Human Services, Appellee). | ) ) ) | |

JUSTICE GAMRATH delivered the judgment of the court, with opinion.
Justices Hyman and C.A. Walker concurred in the judgment and opinion.
Justice Hyman also specially concurred, joined by Justice C.A. Walker.

## OPINION

¶ 1        In March 2006, respondent Vincent Pieroni was found to be a sexually violent person

(SVP) under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West

2006)) and was committed to the custody of the Department of Human Services (DHS) after

stipulating to the State's petition for commitment.

¶ 2        Pieroni petitioned for conditional release in March 2017. The trial court denied the petition

without an evidentiary hearing. On appeal, we reversed and remanded for a discharge and

conditional release hearing. *In re Commitment of Pieroni*, 2020 IL App (1st) 190985-U (*Pieroni*

*I*). Following a May 2022 evidentiary hearing, Judge Willis denied Pieroni discharge and conditional release. We affirmed on appeal. *In re Commitment of Pieroni*, 2024 IL App (1st) 230028-U (*Pieroni II*).

¶ 3        On December 2, 2022, the State filed its annual motion for periodic reexamination and finding of no probable cause. On December 19, 2022, Pieroni filed a "Motion for Relief Under *Hayes*" (see *In re Detention of Hayes*, 321 Ill. App. 3d 178 (2001)) ("motion for relief"[1]), asking the trial court to modify his commitment order to "identify" his post-traumatic stress disorder (PTSD) and trauma "as a treatment goal and impose the reasonable condition" that he receive individual treatment. DHS filed a "nonparty" response objecting to the motion, which Pieroni moved to strike. Pieroni also filed a motion requesting Judge Willis hear the motion for relief, since he presided over the May 2022 evidentiary hearing. Presiding Judge Reddick denied this motion.

¶ 4        On May 22, 2023, Judge Kantas granted the State's motion for periodic reexamination and finding of no probable cause and entered an order of continued commitment. He also denied Pieroni's motion for relief and motion to strike DHS's response, finding DHS had "nonparty standing" to participate without obtaining leave to intervene.[2] On appeal, Pieroni argues the court erred in denying his motion for relief and that Judge Willis should have been the one to hear his motion. He also challenges DHS's nonparty standing. We affirm in part, reverse in part, and remand with directions.

¶ 5                                I. BACKGROUND

---

[1]The parties acknowledged at oral argument that there is no official recognition of a "*Hayes* motion" in Illinois case law or under the Act. Pieroni's motion simply draws on the teachings of *Hayes*.

[2]The trial court also denied Pieroni's motion to strike the report of Dr. Amy Louck Davis, which was attached to the State's motion for periodic reexamination. Pieroni does not challenge the denial of this motion or the trial court's order of continued commitment on appeal.

¶ 6          In 1988, Pieroni was convicted of sexually abusing two children, ages 8 and 10, and was sentenced to seven years in the Illinois Department of Corrections (IDOC). While on parole in 1992, Pieroni sexually reoffended and was sentenced to two years' imprisonment and two years' probation. In 1994, Pieroni pled guilty to sexually abusing four male children while he was on parole for the 1992 offense. He received concurrent sentences of 20 years in the IDOC for the first offense and 14 years for the remaining three. In 2006, Pieroni stipulated to the State's petition to commit him as an SVP and was committed to DHS's Treatment and Detention Facility (TDF).

¶ 7          A. Petition for Conditional Release and Evidentiary Hearing

¶ 8          On March 27, 2017, Pieroni filed a petition for conditional release. On October 16, 2018, while Pieroni's petition was still pending, the State filed a motion for periodic reexamination and finding of no probable cause. On November 5, 2018, the trial court denied Pieroni's petition for conditional release and granted the State's motion, finding there was no probable cause to call for an evidentiary hearing as to whether Pieroni was still an SVP or whether he made sufficient progress in treatment for conditional release.

¶ 9          This court reversed and remanded on appeal, finding Pieroni "met the very low burden necessary to show probable cause to advance to an evidentiary hearing" on both discharge and conditional release under sections 65(b)(2) and 60(c) of the Act (725 ILCS 207/65(b)(2), 60(c) (West 2018)). *Pieroni I*, 2020 IL App (1st) 190985-U, ¶¶ 45, 55.

¶ 10         In May 2022, Judge Willis held a discharge and conditional release hearing. The purpose of the hearing was to determine whether (1) Pieroni's condition "ha[d] so changed that he *** [was] no longer a sexually violent person" and was therefore entitled to discharge (725 ILCS 207/65(b)(2), (3) (West 2022)); and (2) whether he was "no longer substantially probable to engage in acts of sexual violence if on conditional release" (*id.* § 60(d)). On August 15, 2022,

Judge Willis denied discharge and conditional release, finding Pieroni failed to complete sufficient treatment to warrant conditional release. On November 28, 2022, Judge Willis denied Pieroni's motion to reconsider. On March 28, 2024, we affirmed. *Pieroni II*, 2024 IL App (1st) 230028-U, ¶¶ 49, 54.

¶ 11    In *Pieroni II*, we explained in detail the conflicting testimony of Drs. Kimberly Weilt and Brian Abbott concerning Pieroni's treatment progress and his reluctance to engage in step two[3] of sex offender treatment due to his PTSD. Abbott's testimony is relevant because it forms the basis of Pieroni's motion for relief, which seeks individual treatment for his PTSD.

¶ 12    In 2022, Abbott opined that Pieroni no longer suffers from pedophilic disorder and should be discharged or conditionally released. In support of his recommendation for conditional release, Abbott explained that treatment at the TDF is "primarily group therapy only." Conditional release would allow Pieroni to receive "individual treatment that he can't get at TDF for his [PTSD]." Releasees have mandatory group and individual therapy, the latter of which is "of paramount importance to Mr. Pieroni since it would allow him to participate without triggering symptoms of PTSD." Abbott opined that Pieroni needs "intensive, *** twice weekly individual therapy" for his trauma, but the "TDF *** does not have the staff that's experienced to provide that level of care."

¶ 13    Abbott's opinion differed sharply from that of Weitl, who recommended Pieroni's continued commitment in a secure facility because he had not sufficiently progressed in treatment to mitigate the risk of reoffending and declined to engage in step two (disclosure). The trial court found Weitl's testimony credible and held Pieroni had not engaged in sufficient treatment to qualify for conditional release. On appeal, we agreed, specifically noting the record showed

---

[3]SVP offenders at a DHS facility have access to a five-step treatment program consisting of (1) treatment readiness, (2) disclosure, (3) analysis, (4) developing relapse prevention and wellness plans, and (5) conditional release readiness. Step two (disclosure) involves group discussions with approximately 10 men who discuss their prior offenses in detail.

Pieroni had largely declined sex offender specific treatment and had not made sufficient progress in treatment for conditional release. *Id.* ¶¶ 52, 54.

¶ 14    B. State's 2022 Motion for Periodic Reexamination and Pieroni's Motion for Relief

¶ 15    On December 2, 2022, the State filed a motion for periodic reexamination and finding of no probable cause under section 55 of the Act (725 ILCS 207/55 (West 2022)). The motion was supported by Dr. Amy Louck Davis's 2022 reexamination report. Louck Davis opined that Pieroni's condition had not changed since the last examination, Pieroni "consistently stated he does not wish to progress to further phases of treatment," and Pieroni's "treatment related disorder[ ]" of PTSD was "NOT relevant *** for the purposes of the SVP Act."

¶ 16    On December 19, 2022, Pieroni filed a "Motion for Relief Under *Hayes*," requesting that the trial court modify his commitment order to identify his PTSD and trauma "as a treatment goal and impose the reasonable condition that he receive individual treatment for his PTSD and trauma." Specifically, Pieroni requested individual treatment based on Abbott's testimony described in *Pieroni II* that " 'individual therapy is of paramount importance *** because that's the most effective way to deal with his posttraumatic stress disorder symptoms.' "

¶ 17    That same day, Pieroni and the State appeared before Judge Willis. When asked whether the State was going to respond to the motion for relief, the State indicated, "DHS will need time to review the motion to see if they plan to object to it." Judge Willis "strongly suggest[ed] [they] hold [the motion] for [his] week." The State did not object. On February 14, 2023, DHS filed a "nonparty" response to Pieroni's motion for relief, arguing "that DHS has the duty of determining the means of treatment" for an SVP.

¶ 18    C. Motions to Strike DHS's Response and for Judge Willis to Hear Motion for Relief

¶ 19 Pieroni moved to strike DHS's nonparty response later that day, arguing that DHS "neither sought nor obtained leave to appear as a party in this matter." DHS responded that, because it "would have nonparty standing to appeal the Court's order granting the relief requested *** [it] would have nonparty standing to respond to Respondent's motion which seeks relief that exceeds the Court['s] statutory authority." DHS also indicated it would orally move to intervene if the trial court deemed a formal petition necessary.

¶ 20 On February 15, 2023, Judge Willis informed the parties that he was no longer on the SVP call and, thus, would not be "following the case." Accordingly, the parties appeared before Judge Kantas, who had taken over for Judge Willis on the SVP call. Pieroni objected to the change of judge, since Judge Willis had indicated previously that he "was inclined to order [DHS] to adapt to Mr. Pieroni's treatment consistent with the testimony that was heard at the hearing." Specifically, on November 28, 2022, after denying Pieroni's motion to reconsider, Judge Willis said, "if Counsels believe any particular orders are to be given to Rushville for them to be able to adapt to Mr. Pieroni's situation I would be inclined to sign such orders if [DHS] is not inclined to attempt to adapt to Mr. Pieroni's current situation."

¶ 21 On March 9, 2023, Pieroni filed a motion requesting Judge Willis hear the motion for relief, because he "heard testimony regarding [Pieroni's] diagnosis of PTSD, treatment he has received while in custody ***, and recommendations for future treatment." On March 13, 2023, Presiding Judge Reddick heard the contested motion and denied it, concluding that it "does not serve the interest of judicial economy to try to pull a judge from an assigned court call to hear one matter regarding a case *** when, in fact, the final decision has been made" in the case.

¶ 22 D. Trial Court's Ruling

¶ 23 Following a probable cause hearing on May 22, 2023, Judge Kantas granted the State's motion for periodic reexamination and finding of no probable cause and entered an order for Pieroni's continued commitment to the TDF. The parties then proceeded with Pieroni's motion for relief and motion to strike DHS's response. Pieroni argued that DHS lacked nonparty standing to participate in the proceedings, "ha[d] not filed any petition to intervene," and "should not be allowed to intervene if they were to file a petition *** because Hayes [*sic*] does not give them the power to intervene." DHS maintained that it had a "due process right to be heard since the motion does seek relief directly from DHS" and it should not have to wait until appeal to be heard. DHS also orally moved to intervene as of right under section 2-408(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-408(a)(2) (West 2022)). The court denied Pieroni's motion to strike DHS's response, finding that DHS did not have to seek leave to intervene since it "has nonparty standing in the role of providing for the control, care and treatment of the respondent."

¶ 24 As to the requested relief under *Hayes*, Pieroni asked that the trial court "identify [his] treatment goals of PTSD and trauma and that he receive individual therapy" at the TDF based on Abbott's testimony that "group therapy at the TDF is not individualized to Mr. Pieroni." DHS responded that *Hayes* "made it very clear that it is DHS's *** statutory duty to determine the means of treatment." The trial court denied Pieroni's motion for relief, concluding that while the court "may identify goals for a sexually violent person's treatment *** it is the responsibility of DHS *** to determine the means for achieving those goals." Nonetheless, the court declined to make findings "as to a specific treatment goal beyond what has already been identified by the treaters and doctors at DHS."

¶ 25        On June 20, 2023, Pieroni filed the instant appeal from the denial of his "Motion for Relief Under *Hayes* (filed December 19, 2022)." Pieroni later moved to strike DHS's appearance and appellate brief. We denied the motion and took the issue of nonparty standing with the case.

¶ 26                                  II. ANALYSIS

¶ 27                          A. Denial of Motion for Relief

¶ 28        Citing *Hayes*, Pieroni contends the court erred in denying his motion to identify PTSD and trauma as treatment goals and to impose the "reasonable condition" that he receive individual treatment per Abbott's report. While we agree the court has the authority to modify Pieroni's commitment order to identify Pieroni's PTSD and trauma as a treatment goal, *Hayes* does not entitle Pieroni to individual treatment.

¶ 29        In *Hayes*, the Second District of the Appellate Court recognized an interplay between the courts and DHS in framing a commitment order for an SVP under the Act. The court held that while the trial court may identify goals for a SVP's treatment, DHS has the duty to determine the means for achieving those goals. *Hayes*, 321 Ill. App. 3d at 196. The Act requires DHS to provide for the "control, care and treatment" of SVPs. 725 ILCS 207/40(a) (West 2022). As such, courts may not micromanage or interfere with DHS's duty under the Act to determine the nature of the secure facility and the way treatment is provided to SVPs detained or committed. See *Hayes*, 321 Ill. App. 3d at 196. Doing so would exceed the court's authority to impose reasonable conditions on a person's commitment. See *id.* Further, DHS must individually tailor a plan consistent with a person's needs and the court's commitment order from the various treatment options available. *Id.* According to *Hayes*, the Act "clearly contemplates individualized treatment." *Id.* at 194.

¶ 30        Latching onto the phrase "individualized treatment," Pieroni argues he is entitled to individual treatment recommended by Abbott, rather than group therapy. Not so. Individualized

treatment is treatment tailored to a particular individual consistent with their needs and commitment order. It is not a mandate for specialized individual treatment or one-on-one therapy.

¶ 31 Section 40(b)(2) of the Act requires DHS to treat SVPs "in the least restrictive manner consistent with the requirements of the person." 725 ILCS 207/40(b)(2) (West 2022). It also requires the court, when determining whether conditional release or treatment in a secure facility is appropriate, to consider "the person's mental history and present mental condition[ ] and what arrangements are available to ensure that the person has access to and will participate in necessary treatment." *Id.* Under section 40(b)(2) of the Act, the court may, in its discretion, impose reasonable conditions requiring specific treatment in a commitment order, but it shall not exceed its statutory authority in doing so. *Hayes*, 321 Ill. App. 3d at 195-96.

¶ 32 In *Hayes*, the trial court exceeded its authority by appointing a specific individual to oversee Hayes's treatment and trying to direct the way DHS runs its facility and provides care. *Id.* The court also erred in requiring DHS to pay the individual for his supervision of Hayes's treatment. *Id.* at 196. Ordering DHS to provide Pieroni with individual therapy is equally impermissible, particularly where, according to Abbott, such services are not available at the TDF and DHS does not have the staff or expertise to provide such level of care and may have to seek outside assistance to comply.

¶ 33 At the hearing on the motion for relief, Pieroni's counsel used the word "therapy" more than once in advocating for relief. He also used this term at oral argument. But in the reply brief, Pieroni back peddles, saying he did not seek to compel DHS to provide him with individual "therapy"; rather, he just wanted the court to frame a commitment order that identified his PTSD and trauma as a treatment goal with the "reasonable condition" that he receive individual "treatment." This is a distinction without a difference. Whether it is treatment or therapy, Pieroni

clearly seeks an order requiring DHS to provide individual one-on-one services, rather than treatment in a group setting, based on Abbott's report. Ordering individual therapy or treatment would not only deviate from step two (disclosure) of the treatment plan in place for Pieroni, but it would infringe on DHS's authority to determine how treatment is provided. This exceeds the court's authority under the Act.

¶ 34        Pieroni protests, arguing that *Hayes* allows the court to provide treatment in accordance with an expert's report as a reasonable condition without running afoul the Act. See *id.* at 195. However, the doctor in *Hayes* provided several alternative treatment methods and testified that "the treatment programs in place at [the TDF] were adequate to provide the necessary treatment." *Id.* Here, Abbott recommended one specific treatment, individual therapy, which Abbott said DHS could not provide at the TDF and would require Pieroni's conditional release. This shows the futility of Pieroni's request. It is also a reason DHS, not the court, is the one in charge of tailoring individualized treatment plans based on its own knowledge, ability, staffing, and resources. Accordingly, we affirm the court's denial of Pieroni's motion for relief to impose the condition that he receive individual treatment for his PTSD and trauma, which would encroach of DHS's authority to provide for the "control, care and treatment" of Hayes under section 40 of the Act. See 725 ILCS 207/40 (West 2022).

¶ 35        We next turn to Pieroni's request that the court revisit the commitment order and identify PTSD and trauma as a treatment goal. Although the court cannot order DHS to provide Pieroni with the individual therapy recommended by Abbott, the court may establish goals based on recommendations from doctors stemming from a hearing for discharge and conditional release or from a mandatory examination under the Act. See *People v. Rexroat*, 354 Ill. App. 3d 447, 451 (2004).

¶ 36    In this case, the court considered the report of Louck Davis before denying Pieroni's request to make PTSD and trauma a treatment goal. The court, presumably, was also aware of Abbott's and Weitl's opinions summarized in *Pieroni II*. In considering these opinions, the court gave too much deference to DHS and conflated their separate roles by declining to make findings "as to a specific treatment goal beyond what has already been identified by the treaters and doctors at DHS." A key role the court has is to make findings of fact about an SVP's mental condition and identify goals for treatment. The range and choice of treatments is up to DHS, but the court has an obligation to step in and identify goals that could lead to a better success rate for SVPs.

¶ 37    The treatment goal in every SVP case is for the individual to receive the necessary care so that they are no longer likely to reoffend and to reduce sexual recidivism. Pieroni's treatment plan is designed for him to complete the five-step treatment program, which includes getting past step two (disclosure). Pieroni claims he needs help for his PTSD and trauma to do this. Abbott's opinion supports this; Weitl and Louck Davis's opinions do not, although they recognize Pieroni's PTSD is a treatment-related disorder. The record is replete with evidence that Pieroni has PTSD, and to the extent DHS can provide treatment, it should. Otherwise Pieroni will continue to languish at the TDF without much hope for release.

¶ 38    We acknowledge the opinions of Weitl and Louck Davis that Pieroni's PTSD is irrelevant to Pieroni's pedophilic disorder that his treatment plan is designed to address. In their view, Pieroni simply does not wish to progress to further phases of treatment or complete step two (disclosure). Time will tell, depending on what treatment options are available to Pieroni and the effort he exerts. But after 19 years of being committed to the custody of DHS, his commitment order should be modified to add PTSD and trauma as a treatment goal in hope of bringing Pieroni closer to completing step two (disclosure) of his treatment plan. Consistent with *Hayes*, DHS has the duty

of determining the means and treatment for achieving these goals and is in no way bound by Abbott's treatment recommendation for individual therapy or conditional release, which is governed by the strictures of the Act.

¶ 39                    B. Motion to Have Judge Willis Hear Motion for Relief

¶ 40        Pieroni argues that principles of due process and judicial economy required Judge Willis to hear the motion for relief because he presided over the May 2022 discharge and conditional release hearing. Not so. Pieroni does not have a due process right to have his motion for relief heard by his judge of choice. Due process "requires only an impartial judge, not a choice of judge." *People v. Williams*, 124 Ill. 2d 300, 308 (1988); see *People v. Ortiz*, 196 Ill. 2d 236, 256 (2001) ("[l]itigants have no due process right to have cases heard by a particular judge or judges").

¶ 41        Relying on *Smith v. Freeman*, 232 Ill. 2d 218, 229 (2009), Pieroni asserts that "a litigant's right to have the cause determined by the judge who heard the evidence and observed the witnesses is a due process right." *Smith* is inapposite. There, the court addressed whether a successor judge could issue a ruling following on a bench trial before a predecessor judge based solely on the transcripts and arguments of the parties. *Id.* at 220. Here, Judge Kantas is not a "successor judge," as the proceedings before Judge Willis had already concluded on November 28, 2022, and became final and appealable when Judge Willis denied Pieroni's motion to reconsider the denial of discharge and conditional release. Pieroni filed the motion for relief on December 19, 2022, just two days before appealing Judge Willis's orders in *Pieroni II.* The motion for relief was entirely new, dealt with a separate issue and a different burden of proof, and was heard start to finish by Judge Kantas. Unlike *Smith*, it was not a continuation of a trial in progress. Moreover, Pieroni never asked Judge Kantas for an evidentiary hearing, so he cannot complain now that the court ruled without taking live testimony.

¶ 42    The fact that Judge Willis said he would be "inclined" to sign an order supposedly like the one requested by Pieroni is of no moment. Judge Willis made this remark before Pieroni even filed the motion for relief, so there is no telling how he would have ruled. Regardless, no litigant has the right to keep a judge who has been transferred to a new court call or to interfere with the assignment of judicial calendars. As Presiding Judge Reddick said, it would not serve judicial economy to pull Judge Willis from his assigned call to hear a motion in a case in which he had already rendered a final judgment.

¶ 43                                C. Nonparty Standing

¶ 44    Lastly, Pieroni argues that DHS lacks nonparty standing and that the trial court erred in allowing DHS to participate as a nonparty. As a remedy, Pieroni argues we should order that DHS be precluded from participating on remand.

¶ 45    It would be premature for us to preclude DHS from participating altogether on remand, particularly given the interplay between the court and DHS in framing a commitment order and individualized treatment plan for Pieroni. Nonetheless, our remand is limited to the court's inclusion of PTSD and trauma as a treatment goal.

¶ 46    We recognize DHS moved orally to intervene after Pieroni objected to nonparty standing. The court denied the motion, thinking it was unnecessary, and that nonparty standing would do. The court should not make this mistake again and must realize the limited circumstances in which nonparty standing is allowed. For instance, if the court were to impose an order on DHS that falls outside the scope of the court's statutory authority or directly affects DHS's interests, DHS may assert nonparty standing to appeal, vacate, or reconsider the ruling, as the case law provides. See *Hayes*, 321 Ill. App. 3d 178 (DHS had nonparty standing to file a motion to vacate or modify and to appeal the court's order directing it on how to provide treatment); *Odle v. Department of State*

*Police*, 2015 IL App (5th) 140274, ¶ 24 (State Police had nonparty standing to appeal an order directing it to act); *People v. Szypcio*, 307 Ill. App. 3d 609, 611 (1999) (Secretary of State had nonparty standing to appeal order directing it to issue a driver's license). Otherwise, DHS must follow established protocol and apply for intervention if it wants to object in advance of the court's ruling. See 735 ILCS 5/2-408 (West 2022).

¶ 47                                    III. CONCLUSION

¶ 48        For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County, which denied Pieroni's motion for relief, and we remand the cause for entry of an amended commitment order consistent with this decision.

¶ 49        Affirmed in part and reversed in part; cause remanded.

¶ 50        JUSTICE HYMAN, specially concurring:

¶ 51        The DHS approach to individualized treatment, including one-on-one therapy when clinically necessary, conflicts with the Act's purpose, the principles articulated in *Hayes*, and basic notions of justice. The Act promises "control, care and treatment" in the least restrictive manner consistent with an individual's needs. 725 ILCS 207/40(b)(2) (West 2022). Yet, the DHS interpretation of "individualized treatment" threatens to render this guarantee hollow.

¶ 52        Treating all individuals the same regardless of their needs is not individualized treatment—it is a failure of the system. The DHS is not only neglecting the mental health needs of individuals but undermines public safety. The longer a person languishes without proper treatment, the further they are from rehabilitation. Addressing the root causes of the illness is essential to reducing recidivism and achieving safe reintegration into society. Roger Przybylski, *The Effectiveness of Treatment for Adult Sexual Offenders*, U.S. Dep't of Just. Sex Offender Mgmt. Assessment and Plan. Initiative Rsch. Brief 3 (July 2015), https://smart.ojp.gov/sites/g/files/xyckuh231/files/

media/document/theeffectivenessoftreatmentforadultsexualoffenders.pdf [https://perma.cc/ 8K6C-F2J7] ("the most reasonable estimate at this point is that treatment can reduce sexual recidivism over a 5-year period by 5-8%" (emphasis and internal quotation marks omitted)).

¶ 53    Legislative action is needed so the law fulfills its promise of care, rehabilitation, and safety.

¶ 54    Statutory Mandate for Individualized Treatment

¶ 55    The phrase "individualized treatment" cannot mean anything—or nothing. DHS's interpretation risks reducing a core statutory principle to a procedural box-checking exercise.

¶ 56    The Act mandates that treatment be tailored to the person's specific needs. The court in *Hayes* emphasized that the statute "clearly contemplates individualized treatment." *Hayes*, 321 Ill. App. 3d at 194. Still, the DHS asserts that it can fulfill this obligation solely through group therapy, regardless of whether it meets the person's needs. This position ignores the real-world impact of conditions like PTSD that require targeted, one-on-one care. Christian Schrader & Abigail Ross, *A Review of PTSD and Current Treatment Strategies*, 118 Mo. Med. 546 (2021) (finding greatest treatment benefit for PTSD is seen with certain types of individual therapy, such as cognitive processing therapy and prolonged exposure therapy, not group therapy).

¶ 57    Pieroni's case demonstrates the consequences of this approach. For nearly two decades, he has remained unable to advance through the treatment program. Experts agree that untreated PTSD creates a significant barrier to his progress. Without addressing this underlying condition, Pieroni's participation in group therapy—the cornerstone of the DHS approach—is futile.

¶ 58    The purpose of the Act is not indefinite confinement but rehabilitation. *In re Detention of New*, 2013 IL App (1st) 111556, ¶ 58 ("the purpose of civil commitment is treatment, not punishment"); *In re Commitment of Rutherford*, 2019 IL App (2d) 180211, ¶ 14 ("[c]ommitment under the Sexually Violent Persons Commitment Act *** contemplates the possibility of

rehabilitation and discharge"). A system that denies necessary care while demanding progress is neither rational nor fair. Here, individualized care is needed to make it possible for Pieroni to engage in group therapy and comply with his treatment goals. Withholding the one-on-one treatment for PTSD contradicts the Act's goals.

¶ 59    The DHS argues that it lacks the resources to provide individual therapy. That excuse cannot justify abandoning the statutory obligation to provide care by denying treatment outright. If DHS cannot meet its obligations, the solution lies in legislative reform, not in constraining the meaning of the law to fit its shortcomings.

¶ 60                                    Legislative Action

¶ 61    Section 299.410 of the DHS administrative rules permits the program director to file a petition for conditional release based on changes in a resident's mental or physical condition. 59 Ill. Adm. Code 299.410 (2020). Presumably then, a resident who needs individual therapy to treat a condition like PTSD could obtain a conditional release to obtain treatment outside the facility. But this creates a catch-22 for a petitioner like Pieroni. The trial court determined Pieroni had not made sufficient progress in treatment for his underlying condition to warrant conditional release yet the treatment he needs to make progress is available only outside the facility.

¶ 62    The legislature should address this gap in the Act by clarifying that, when deemed necessary by clinical professionals, DHS provide one-on-one therapy at the facility. While DHS understandably faces resource constraints, individualized treatment of prolonged confinement and untreated mental illness—in terms of human and financial terms—jeopardizes the efficacy of the system designed to serve both human frailties and justice.

¶ 63    JUSTICE C.A. WALKER joins in this special concurrence.

***In re Commitment of Pieroni*, 2025 IL App (1st) 231148**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 5-CR-80008; the Hon. Nicholas Kantas and the Hon. Erica L. Reddick, Judges, presiding. |
| **Attorneys for Appellant:** | Michael R. Johnson and Daniel Lastres, of Law Office of Michael R. Johnson LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellee. |